BERRY, Plaintiff in error-Respondent, V. STATE, Defendant in error-Petitioner.

Supreme Court

*No. 77–550–CR.  Submitted on briefs May 31, 1979.—
Decided June 29, 1979.*
(Also reported in 280 N.W.2d 204.)

318

For the defendant in error the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Betty R. Brown,* assistant attorney general.

For the plaintiff in error the cause was submitted on the brief of *Richard L. Cates,* state public defender, and *Jack E. Schairer,* assistant state public defender.

BEILFUSS, C.J. The main issue in the appeal is whether a criminal defendant may properly be convicted of attempted theft upon evidence establishing a completed theft. It requires us to consider whether failure is an essential element of a criminal attempt as defined in sec. 939.32, Stats. The court of appeals determined that failure to consummate the crime was a necessary element of criminal attempt and, finding sufficient proof of a completed theft in the present case, overturned the conviction. We reverse.

Kenneth Berry was charged with attempted theft in violation of secs. 943.20 and 939.32, Stats., in connection with an incident which occurred on the afternoon of January 31, 1976 at the Rupert Cornelius Clothing Store in Madison, Wisconsin. The criminal complaint alleged that Berry intentionally attempted to "take away" a brown leather coat valued at $230 without consent and with the intent to permanently deprive the owner of possession.[2] After almost a year's delay occasioned by the

---

[2] It was later stipulated that Rupert Cornelius paid $112.50 for the coat.

defendant's disappearance, the defendant was tried by a jury; was found guilty of attempted theft as charged in the information; and sentenced to an indeterminate term of imprisonment of not more than one year, less credit for preconviction incarceration.

The state's principal witness was store employee David Radtke who related the details of the theft attempt and identified the defendant as the person involved. Radtke testified that at approximately 3:15 p.m., on January 31, 1976, he was working in the basement of the lower level sales floor of the Rupert Cornelius men's store. He walked into a rear room and saw a man facing the side wall. The man appeared to be trying to force something into his pants or under his coat. Radtke approached the man and noticed that there appeared to be a bulge under his parka. He suspected that there might be something concealed and asked the man if he had anything under his coat. The man said that he hadn't, but Radtke was still suspicious. Radtke opened the parka and saw a brown leather coat had been tucked into the pants. According to Radtke's testimony, the leather coat had been forced half-way into the pants; the part that could not fit into the pants was concealed by the jacket. Words were exchanged. A tug-of-war ensued and eventually Radtke was able to pull the coat free. The man gave Radtke a final shove and fled walking very fast. The defendant did not dispute the details of the incident recounted by Radtke, but maintained that Radtke's identification of him as the would-be thief was mistaken. Testifying himself and calling several witnesses on his behalf, the defendant relied on an alibi defense.

A writ of error to review the judgment of conviction and sentence was originally obtained from this court by the defendant, but the case was later transferred to the court of appeals for appellate review. The court of appeals reversed the conviction. The court's decision had

three facets: first, without precising the standard of review employed, the court reviewed the evidence and concluded that Berry "unquestionably" took and carried away the leather coat; second, construing the language in the general attempt statute, the court concluded that failure to consummate a crime was a necessary element of criminal attempt as defined in sec. 939.32(2), Stats.; third, building on the first two propositions, the court reached the ultimate conclusion that proof that the theft was completed in the present case prevented the accused from being convicted of attempted theft. The court, recognizing that its analysis produced an anomalous result, noted that the defendant went free " 'not because he was innocent, but for the very strange reason, that he was too guilty.' "[3]

A preliminary issue must be addressed regarding the right of the state to seek review of the court of appeals' decision in the present case. In the brief on review and in a separate motion to dismiss the state's appeal, defendant Berry asserts that review of the court of appeals' decision reversing his conviction on the ground that the evidence did not support the jury verdict is barred by the Double Jeopardy Clause of the federal constitution.[4] This contention misconceives the reach of the constitutional limitations inhibiting governmental appeals. It should be noted that the issue of this court's general jurisdiction to entertain a governmental appeal from a decision of the court of appeals in a criminal matter has already been decided. The necessary authority is found

[3] *Berry v. State, supra* at 90. The court cited *United States v. Fleming,* 215 A.2d 839, 840–41 (D.C.C.A. 1966), quoting from *State of Connecticut v. Shephard,* 7 Conn. 54 (1828).

[4] The Fifth Amendment to the United States Constitution declares ". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb. . . ." The Wisconsin Constitution contains a similar guarantee. *Cf.* Art. I, sec. 8.

in the constitutional amendment and implementing legislation which established the court of appeals.[5] The narrow issue is whether, despite this general authority, the court is barred from undertaking a review of the court of appeals' decision under the particular facts of the present case.

The important policies which form the foundation of the Double Jeopardy Clause were eloquently described by the United States Supreme Court in *Green v. United States*, 355 U.S. 184, 187–88 (1957) :

"The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *See also Serfass v. United States,* 420 U.S. 377, 387–88 (1975).

It has been observed that the common-law roots of the constitutional prohibition "suggests that it was directed at the threat of multiple prosecutions, not at Government appeals, at least where those appeals would not require a new trial." *United States v. Wilson,* 420 U.S. 332, 342 (1975) ; *United States v. Jenkins,* 420 U.S. 458, 365 (1975).

In *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969), the Supreme Court noted that the Double Jeopardy Clause provided three related protections: "It protects against

---

[5] *State v. Barrett,* 89 Wis.2d 367, 280 N.W.2d 114 (1979).

a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." These protections are implicated, however, only when the accused has actually been placed in jeopardy and where a government appeal presents a threat of successive prosecutions. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569–70 (1977).

In this case review by this court involves no threat of either multiple punishment or successive prosecutions. A successful governmental appeal would not necessitate a second trial of "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged." *See United States v. Jenkins, supra,* 420 U.S. at 370. Since reversal of the court of appeals' decision overturning the conviction would merely reinstate the jury's verdict, review of the decision by this court is not barred by the Double Jeopardy Clause of the federal constitution. *See United States v. Wilson, supra,* 420 U.S. at 344–45.

The defendant's reliance on the recent Supreme Court decision in *Burks v. United States,* 437 U.S. 1 (1978), is unfounded. There is nothing in *Burks* or in *Green v. Massey,* 437 U.S. 19 (1978), which applied the holding of *Burks* to state criminal proceedings, to suggest that the present review offends the Double Jeopardy Clause. In *Burks* the Court of Appeals for the Sixth Circuit reversed a judgment of conviction on the grounds that the evidence was insufficient to support the verdict and remanded the case to the district court to determine whether a directed verdict of acquittal should be entered or a new trial ordered. The Supreme Court reversed, declaring that the only "just" remedy available to the district court under the circumstances was the directed verdict

of acquittal. *Id.* at 18. *Burks* holds only "that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." *Id.* at 18. Significantly, the majority opinion explicitly observed that the government had not cross-petitioned for review of the question whether the court of appeals was correct in holding that the state had failed to meet its burden of proof. *Id.* at 5.

The key to invoking double jeopardy protection is not simply whether a defendant, as in the present case, can point to a prior verdict or judgment of acquittal, but whether the defendant might be subjected to multiple prosecutions. *Cf. United States v. Wilson, supra,* 420 U.S. at 347. Review of the court of appeals' decision involves no such risk; it does not offend the Double Jeopardy Clause of the federal constitution. The defendant's motion to dismiss the state's appeal on double jeopardy grounds is denied.

The first issued raised by the state concerns the court of appeals' construction of the general attempt statute within the context of the alleged attempted theft involved in the present case. The relevant language of the attempt statute reads as follows:

"939.32 **Attempt.** . . .
"(2) An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor." (1975 Stats.)

Theft, so far as material, is defined in sec. 943.20 (1) (a), Stats., as an act by which a person

"(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property

of another without his consent and with intent to deprive the owner permanently of possession of such property." (1975 Stats.)

The court of appeals reviewed the trial court's judgment of conviction on sufficiency of the evidence grounds and determined that the evidence adduced at trial "unquestionably" proved that the defendant had consummated the crime of theft before his tug-of-war with the clerk and his subsequent flight. The court concluded that proof of the completed theft required reversal of the conviction of an attempt to commit theft because failure to consummate the crime was an element of a criminal attempt as defined by the statute. We disagree.

At common law two elements were required for conduct to be deemed a criminal attempt: (1) intent to commit the crime allegedly attempted; (2) some acts in furtherance of that intent.[6] While it was generally agreed that something more than mere criminal intent was necessary and that some overt act was required, a variety of approaches was used to determine what acts would satisfy the requirements. A common purpose of all the approaches was to provide a basis for determining whether the accused had "done enough" to justify an inference of a criminal intent and to give rise to attempt liability.[7]

---

[6] 1960 Wisconsin Law Review, 516, fn. 1 and sources cited therein.

[7] The most common theories were the preparation theory, the proximity theory, the *locus poenitentiae* or probable desistance theory and the equivocality theory. *See generally* LaFave and Scott, *Handbook on Criminal Law* (Hornbook Series), sec. 59 at 423–38 (1972). A useful capsule description of these approaches appears in a note in the Wisconsin Law Review which reads as follows:

"The preparation theory provided that there was no criminal attempt unless what was done went beyond the stage of merely arranging for the means necessary to effectuate the intended result. The proximity theory required that the overt acts approximate the intended result. The *locus poenitentiae* theory required a judg-

Wisconsin's general attempt statute similarly requires that the person have the requisite criminal intent and that he perform "acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor." Like common law attempt, the statutory crime has two elements, a criminal intent and some acts in furtherance of the intent.[8] The provision that the acts required to establish criminal attempt be ones which demonstrate that the actor would commit the crime "except for the intervention of another person or some other extraneous factor" does not add an additional, separate requirement that the attempt be thwarted by an outside force.[9] Neither does it operate to make failure an essential element of criminal attempt. The real significance of the phrase was characterized by one commentator in the following manner: "The defendant's conduct must pass that point where most men, holding such an intention as the defendant holds, would think better of their conduct and desist."[10]

ment in each case that the defendant had passed a point at which he might have repented and withdrawn. It has been stated that demonstrating the criminal intent is the rationale behind all the preceding theories and more specifically behind the requirement of a sufficient overt act. The equivocality theory embodies this rationale. This theory requires that the acts unequivocally manifest that the criminal intent is possessed by the defendant. The theory is premised on the assumption that ambiguous acts are the product of an ambiguous intent." Note, 1960 Wisconsin Law Review, 516, 523–24.

[8] Note, 1960 Wisconsin Law Review at 516. *See also* Wis J I—Criminal, Part I, 580 (Supplementary Service).

[9] *Id.* at 527.

[10] Skilton, *The Requisite Act in a Criminal Attempt*, 3 U. Pitt. L. Rev. 308 (1937), cited in LaFave and Scott, *supra*, fn. 6.

The phrase necessitates a determination whether under all the circumstances it was too late for the person to have repented and withdrawn. The thrust of the provision is that the acts must not be so few or of such an equivocal nature as to render doubtful the existence of the requisite criminal intent. Failure, if and by whatever means the actor's efforts are frustrated, is relevant and significant only insofar as it may negate any inference that the actor did in fact possess the necessary criminal intent to commit the crime in question.[11]

The observations of the Court of Appeals for the Fifth Circuit in *United States v. York,* 578 F.2d 1036 (5th Cir. 1978), on the development of criminal attempt are particularly helpful. In a case which involved federal attempt law, the court traced the common-law roots of criminal attempt and declined to incorporate the merger rule derived from the common law of crimes into federal statutory offenses. The observations of the court, at 1038–1039, are apropos:

"At common law, an attempt was a misdemeanor. The assumption that none but a failure may be condemned for his attempt may be derived from the old common law rule of merger under which, if an act resulted in both a misdemeanor and a felony, the misdemeanor was said to be absorbed into the felony. *State v. Gallegos,* 1975, 193 Neb. 651, 228 N.W.2d 615; *United States v. Fleming,* D. C. App. 1966, 215 A.2d 839; LaFave and Scott, Criminal Law 452 (1st ed. 1972). The rationale behind this obliteration is undermined if both the attempt and the successful crime are misdemeanors, as it is if both are felonies. *See Bellande v. United States,* 5 Cir., 1928, 25 F.2d 1, and *Steigman v. United States,* 3 Cir. 1915, 220

[11] *See generally* Perkins, *Criminal Law,* 552–54 (2d ed. 1969). cited in *Lightfoot v. State,* 360 A.2d 426 (1976), for a persuasive critique of the theory that failure is an essential element of attempt.

F. 63, both rejecting the merger rule as applied to conspiracies. The English merger rule was erased by statute in 1851, 14 §15 Vict. c. 100 §12 (1851), and there is no reason to apply it in this country a century and a quarter later. *Iannelli v. United States*, 1975, 420 U.S. 770, 777 n. 11, 95 S. Ct. 1284, 1290 n. 11, 43 L. Ed.2d 616 (concerning whether a conspiracy merges into the completed offense). *See also* LaFave and Scott, *supra.*"

As noted by the court, the reasons for rejecting the merger rule are cogent ones, equally applicable to the present case:

"To compel acquittal of an attempt because the completed offense was proved would result in the 'anomalous situation of a defendant going free "not because he was innocent, but for the very strange reason, that he was too guilty." ' (Footnote omitted.) *United States v. Fleming, supra*, 215 A.2d at 840–841. Moreover, requiring the government to prove failure as an element of attempt would lead to the anomalous result that, if there were a reasonable doubt concerning whether or not a crime had been completed, a jury could find the defendant guilty neither of a completed offense nor of an attempt." *Id.* at 1039.

To conclude, the court of appeals in the decision below erroneously determined that it was compelled by the language of Wisconsin's attempt statute to conclude that proof of the completed crime precluded conviction of an attempt to commit the crime. As pointed out above, the language of sec. 939.32(2), Stats., compels no such result. An unequivocal act accompanied by the requisite intent is sufficient to constitute criminal attempt under the statute. Failure is significant only insofar as it may refute the inference of criminal intent.

Our disposition of the first issue raised by the state makes it unnecessary to consider the second issue, namely, whether the court of appeals erred in determining that the evidence unquestionably proved a completed

theft. It having been determined that proof of a completed crime does not foreclose the possibility of conviction of the attempt to commit the crime, the question whether the evidence established a consummated theft becomes immaterial. Nevertheless, the implications of the court of appeals' treatment of the matter make it appropriate for this court to address the sufficiency of the evidence issue.

The court of appeals determined that the defendant "took" the leather coat within the meaning of the statute when he moved the jacket from wherever he got it to his trousers. The court further determined that that movement and the acts of stuffing the jacket into his trousers and turning to face the clerk fulfilled the statutory requirement of "carrying away." *Berry v. State, supra,* 87 Wis.2d at 88. The issue is whether, in view of all the evidence and in light of the appropriate standard of review, the court of appeals was wrong when it determined that the jury acting reasonably could not have been convinced that the theft was not consummated.

"The test on appeal of the sufficiency of the evidence to convict is whether the 'evidence adduced, entitled to belief, and rationally considered by a jury was sufficient to prove the defendant's guilt beyond a reasonable doubt.' The test is 'not whether this court is convinced of the defendant's guilt but whether the jury acting reasonably could be so convinced.' " *Willis v. State,* 60 Wis.2d 158, 162, 208 N.W.2d 403 (1973).

The question is whether a jury could properly be convinced that the evidence did not support a finding that the defendant was guilty of "taking" and "carrying away" the leather jacket. We conclude that it could. It is clear that "asportation is a separate and necessary element of the crime of theft." *Champlain v. State,* 53 Wis.2d 751, 755, 193 N.W.2d 868 (1972) ; *Hawpetoss v.*

*State,* 52 Wis.2d 71, 187 N.W.2d 823 (1971). The court of appeals, noting that any movement however slight has been held to satisfy this requirement, was of the opinion that there was sufficient proof of asportation in the present case.[12]

The asportation requirement should be considered in light of the statute's general purpose to proscribe the exercise of unauthorized control over the movable property of another. "Carrying away" must be given a practical, common-sense construction. While the asportation requirement may be satisfied by proof of the slightest movement, it is implicit in the statute that the movement must be a movement away from the area where the product was intended to be. A retail store owner selling clothing consents to having a potential purchaser, during business hours, take an item of clothing from a rack and into a nearby room for the purpose of trying it on. The part of the store in which Radtke first noticed the defendant was not restricted to authorized personnel; it was clearly accessible to customers. The defendant, when he had possession of the leather coat, did not evade the final point of purchase which, according to Radtke's testimony, was located at the opposite end of the lower level of the store. The test is not whether the court of appeals or this court is convinced that the defendant did not consummate the crime of theft by "taking away" the coat as charged in the information, but whether the jury acting reasonably could be convinced that the defendant did not consummate the crime of theft. While it is unnecessary to decide the issue in view of the disposition of the first

[12] In support of this proposition, the court of appeals cited an article by Melli and Remington entitled *Theft—A Comparative Analysis of the Current Law and the Proposed Criminal Code,* 1954 Wisconsin Law Review 253, 256. *See also* Annot., 144 A.L.R. 1383 (1943).

issue, we conclude that under the circumstances of the present case the jury could have been so convinced.

In the reply brief the defendant makes a final argument concerning the giving of a flight instruction. This issue was not treated by the court of appeals in its review. The argument is without merit. It is well established in this state that evidence of flight and resistance to arrest has probative value to guilt. *Gauthier v. State,* 28 Wis.2d 412, 137 N.W.2d 101 (1965).

The defendant was charged with attempted theft for intentionally attempting to "take away" the property of another. Following a trial by jury, he was found guilty as charged. A review of the record reveals that the "evidence adduced, entitled to belief, and rationally considered by a jury" was sufficient to prove the defendant's guilt beyond a reasonable doubt. The decision of the court of appeals must be reversed and the trial court's judgment of conviction on the jury verdict finding the defendant guilty of attempted theft must be reinstated.

*By the Court.*—Judgment reversed. Cause remanded for reinstatement of the judgment of conviction.