STATE, Plaintiff-Respondent-Petitioner, v. BOWDEN, Defendant-Appellant.

Supreme Court

*No. 79-186-CR. Submitted on briefs January 8, 1980.—Decided February 7, 1980.*

(Also reported in 288 N.W.2d 139.)

For respondent-petitioner there were briefs by *Bronson C. La Follette,* attorney general, and *Pamela Magee-Heilprin,* assistant attorney general.

For defendant-appellant there was a brief by *Richard M. Sals,* assistant state public defender.

BEILFUSS, C. J. This case comes before us on a petition to review a decision of the court of appeals, district IV, issued on June 20, 1979, reversing a judgment of the circuit court for Rock county, EDWIN C. DAHLBERG, Circuit Judge. Defendant-appellant John A.

Bowden, hereinafter defendant, was convicted of burglary, intent to steal, contrary to sec. 943.10(1)(a), Stats.,[1] following a trial to the court. A judgment of conviction was entered October 2, 1978, and defendant's motion for a new trial was denied by order entered January 25, 1979. Appeal was taken to the court of appeals and that court reversed, finding that the evidence was insufficient to establish the requisite element of intent to steal. It remanded the case to the trial court with directions to dismiss the complaint. We reverse the court of appeals and affirm the conviction.

The unopposed testimony presented by the state revealed that at approximately 4:30 a.m., on April 28, 1978, defendant entered the private residence of the Turner family in Beloit, Wisconsin, without their consent. Fifteen-year-old Claudette Turner awoke and noticed a shadowy figure in the hallway outside her bedroom. When she called out "who is it?", defendant at first did not respond but then walked into her room and asked her how to get to Milwaukee. Claudette stated she didn't know and defendant then pulled her blankets off and jumped into her bed on top of her. He covered her mouth with his hand and held a garden trowel, which he had picked up on the back porch, to her throat, telling her that if she made a sound he'd kill her.

Claudette managed to break away from defendant and ran into the hall screaming. She was met there by her sister, seventeen-year-old Pamela Turner, who had been awakened by the noise. Pam pushed her sister away from defendant and told her to go upstairs and get their father. As Pam remained in the hallway with her hand on defendant's chest to keep him away from her, he again

---

[1] "943.10 **Burglary.** (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class C felony:

"(a) Any building or dwelling; or. . . ."

asked for directions to Milwaukee and stated over and over that he had to get to Milwaukee.

Defendant then pushed her aside and began walking past her in the direction of the back door. He stopped, however, when Mrs. Turner entered the hallway. She asked him what he was doing in her house and he again stated he had to get to Milwaukee. Mrs. Turner told defendant to leave before her husband came down, but he just stood there and then began walking back and forth between Mrs. Turner and Pam, saying that he had been pushed out of a car and had to get to Milwaukee.

Shortly thereafter Mr. Turner came down the stairs carrying a knife and a wooden closet rod. Mrs. Turner went into the kitchen to call the police. Upon seeing the defendant, Mr. Turner asked him how he had gotten into the house. Defendant replied that he had come in through the back door. Seeing that the back door was locked, Mr. Turner told defendant he was a liar. At that point defendant made a move to the back door. Mr. Turner ordered him to stop and get down on the floor. Defendant hesitated and Turner again ordered him to get down. Defendant finally dropped down on one knee. He told Turner that he didn't mean anyone harm, but that he was not afraid of that stick he was carrying.

As he knelt there on the floor, defendant repeated his story that he had been pushed out of a car and that he had to get to Milwaukee. He stated that he had stopped at other houses in the neighborhood seeking directions, but that no one had answered their doors. He also attempted to show Turner his leg which he said he had injured when he was pushed out of the car.

When police officers finally arrived, defendant attempted to leave the home. A struggle ensued during which the garden trowel which defendant had held to Claudette Turner's throat fell from his belt onto the ground. Defendant was then handcuffed and conveyed to the Beloit police station. En route to the station defend-

ant once again stated that he had been pushed out of a car on his way to Milwaukee and had entered the Turner residence to get directions to Milwaukee.

In a subsequent statement to the police, defendant stated that the driver of the car in which he had been riding that night pulled over so that he and another passenger could change seating positions. As he was getting out of the car to do so, the driver sped off, dragging him until he let go. Defendant stated he then tried to find his way to Milwaukee. He flagged down a school bus and received directions from the driver, but then became confused and started to go door-to-door looking for further directions. When he came to the Turner residence, he stated, he found the front door open and entered.

At the time of his arrest, defendant's trousers were soiled and torn and there were lacerations and abrasions on his legs. An examination of the Turner house revealed that a screen covering the kitchen window had been removed and set against the side of the house. The window itself was wide open and the curtains were hanging down in the sink beneath it. Pamela Turner stated that the window had been shut when she went to bed at 2 a.m. that morning and that she had closed tightly and locked both the front and back doors.

On the basis of this evidence, the trial court found the defendant guilty of the crime charged. Conceding that there was no direct evidence of an intent to steal, the court concluded that the circumstances surrounding defendant's entry of the residence were sufficient to support the inference that it was with such intent.

In reversing the trial court's judgment, the court of appeals held that the totality of defendant's actions could not support the inference of intent to steal to that degree of certitude which the law requires. Upon reviewing the evidence, we disagree.

Before reaching the merits of the state's appeal, however, we turn first to defendant's contention that review

by this court is barred by the Double Jeopardy Clause of the United States Constitution. Defendant argues, primarily on the basis of the United States Supreme Court's decision in *Burks v. United States,* 437 U.S. 1 (1978), that the court of appeals' reversal of defendant's conviction on grounds of insufficiency of the evidence is tantamount to a judgment of acquittal and that, therefore, no further review is permitted.

We rejected this same argument in a case decided less than one year ago. In *Berry v. State,* 90 Wis.2d 316, 280 N.W.2d 204 (1979), defendant similarly argued that review of the court of appeals' decision reversing his conviction for attempted theft on the ground that the evidence did not support the jury verdict was barred by the Double Jeopardy Clause of the federal constitution. We noted that, in construing the Double Jeopardy Clause, the United States Supreme Court had held that it provides three related protections, none of which were implicated by review of an intermediate appellate court's overturning of a conviction on sufficiency grounds.

The protections afforded by the Double Jeopardy Clause include: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969). In *Berry v. State, supra,* 90 Wis.2d at 323, we held:

"... review by this court involves no threat of either multiple punishment or successive prosecutions. A successful governmental appeal would not necessitate a second trial [or] 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged.' *See United States v. Jenkins, supra,* 420 U.S. at 370. Since reversal of the court of appeals' decision overturning the conviction would merely reinstate the jury's verdict, review of the decision by

this court is not barred by the Double Jeopardy Clause of the federal constitution. *See United States v. Wilson, supra,* 420 U.S. at 344–45."

We also considered in *Berry* defendant's contention that the United States Supreme Court's decision in *Burks v. United States, supra,* required a contrary result. After reviewing that court's holding in *Burks,* we concluded that defendant's reliance upon it was misplaced:

"The defendant's reliance on the recent Supreme Court decision in *Burks v. United States,* 437 U.S. 1 (1978), is unfounded. There is nothing in *Burks* or in *Green v. Massey,* 437 U.S. 19 (1978), which applied the holding of *Burks* to state criminal proceedings, to suggest that the present view offends the Double Jeopardy Clause. In *Burks* the Court of Appeals for the Sixth Circuit reversed a judgment of conviction on the grounds that the evidence was insufficient to support the verdict and remanded the case to the district court to determine whether a directed verdict of acquittal should be entered or a new trial ordered. The Supreme Court reversed, declaring that the only 'just' remedy available to the district court under the circumstances was the directed verdict of acquittal. *Id.* at 18. *Burks* holds only 'that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient.' *Id.* at 18."

In this case, as in *Berry,* defendant is under no threat of a second trial. The question before us is simply whether the court of appeals erred in overturning the conviction which resulted from his first trial. Whatever our decision, it does not require a new trial. Defendant's conviction will either be reinstated or its reversal affirmed.

Were we to accept defendant's contention, the decisions of the court of appeals would have the effect of a jury verdict or a judge's finding of fact on the question of the sufficiency of the evidence. Such a result is contrary to the very concept of an intermediate appellate court.

We therefore reject the argument that a review by this court is barred and proceed to a consideration of the appeal on its merits.

The crime of burglary, as charged here, consists of three essential elements: (1) an intentional entry of a dwelling; (2) without the consent of the person in lawful possession, and (3) with intent to steal. *Strait v. State,* 41 Wis.2d 552, 555, 164 N.W.2d 505 (1969). At trial the state carries the burden of proof and must establish each essential element of the crime charged beyond a reasonable doubt. *Galarza v. State,* 66 Wis.2d 611, 616, 225 N.W.2d 450 (1975).

Defendant concedes that the first two elements of the crime with which he was charged were sufficiently proven. He forcefully argues, however, that the trial court's finding of intent to steal was entirely speculative and cannot be sustained on review.

This court, like all appellate courts, accords substantial deference to the trier of fact in a criminal trial. Whether trial is before a jury or to the court, the question on appeal is not whether the reviewing court is convinced of the defendant's guilt beyond a reasonable doubt, but whether it is possible for the trier of fact, acting reasonably, to have been so convinced. *State v. Koller,* 87 Wis.2d 253, 266, 274 N.W.2d 651 (1979). Attempting to further clarify the test, we have stated it conversely as follows: ". . . the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' " *Lock v. State,* 31 Wis.2d 110, 115, 142 N.W.2d 183 (1966).

In proving its case, the state may rely in whole or in part upon circumstantial evidence. *Kelly v. State*, 75 Wis.2d 303, 320, 249 N.W.2d 800 (1977). Seldom is direct evidence available as to each and every element of an offense. Direct proof is particularly rare with respect to intent, an element which, by its very nature, is elusive. *Garcia v. State*, 73 Wis.2d 174, 183, 242 N.W. 2d 919 (1976).

However, intent, also by its very nature, is capable of being gleaned from one's conduct and the circumstances surrounding it.

"Intent is a state of mind existing at the time a person commits an offense. If intent required definite and substantive proof, it would be almost impossible to convict, absent facts disclosing a culmination of the intent. The mind of an alleged offender, however, may be read from his acts, conduct and inferences fairly deducible from all the circumstances." 13 Am. Jur. 2d, *Burglary*, p. 352, sec. 52.

The question we face here, then, is whether defendant's conduct and the circumstances surrounding it could lead the ordinary person to conclude beyond a reasonable doubt that his entry of the Turner residence was with intent to steal.

In *State v. Barclay*, 54 Wis.2d 651, 654, 196 N.W.2d 745 (1972), the court noted that its prior decision on this issue[2] had been expressly overruled and stated anew the law that was to be applied:

[2] In *State v. Kennedy*, 15 Wis.2d 600, 613, 113 N.W.2d 372 (1962), the court had held that an intent to steal sufficient to sustain a burglary conviction could not be inferred from a breaking and entering at night into a school. In *State v. Holmstrom*, 43 Wis.2d 465, 476, 168 N.W.2d 574 (1969), the court withdrew from this position.

"While it remains the law in this state that intent to steal will not be inferred from the fact of entry alone, it is also the law that '. . . additional circumstances such as time, nature of place entered, method of entry, identity of the accused and other circumstances, without proof of actual larceny, can be sufficient to permit a reasonable person to conclude the defendant entered with an intent to steal.' "

The court went on in *Barclay, supra,* 54 Wis.2d at 655, to catalogue and compare two prior cases, *Strait v. State, supra,* 41 Wis.2d 552, and *State v. Holmstrom, supra,* 43 Wis. 2d 465, with the case before it. It pointed out a clear parallel between the circumstances of the prior cases and those of the case to be decided and concluded that the inference of intent to steal was justified in all three:

"In all three cases, entry was forcible, a usual circumstance in after-closing hour, tavern-restaurant burglaries. In all three situations, the manner of entry involved damage to the building, a broken window in two cases, a smashed door in the third, a situation negativing either a casual or friendly visit. In all three prosecutions, the place entered was a tavern-restaurant type enterprise where cash as well as merchandise and equipment were likely prizes for the would-be burglar. In all three break-ins, the place of entry was away from the front entrance at a place less likely to be observed by passersby. In all three attempted burglaries, the time of entry was after closing hours and in the early morning when the likelihood of interruption was at a minimum. In all three trials, it was established that the defendant sought to evade apprehension or arrest by the police. In all three cases, such surrounding circumstances were more than adequate to warrant the juries in finding that an intent to steal existed. In all three cases, such additional circumstances associated with the three unlawful entries were '. . . sufficient to permit a reasonable person to conclude the defendant[s] entered with an intent to steal.' And that is the test." *Id.,* 54 Wis.2d at 655–56.

In rejecting the state's contention that this case was sufficiently similar to *Barclay, Strait* and *Holmstrom* on

its facts to justify the trial court's inference of intent, the court of appeals stated that this case differed in three respects: (1) defendant's entry was not forcible, (2) the premises entered was a private residence rather than a "tavern restaurant-type enterprise where cash as well as merchandise and equipment were likely prizes for the would-be burglar," and (3) defendant made no attempt to flee when initially discovered. We believe each of these distinctions to be either unfounded or insignificant.

The court of appeals' characterization of defendant's entry of the Turner residence as "without force" is erroneous. In *State v. Lewis,* 113 Wis. 391, 393, 89 N.W. 143 (1902), the court reversed a trial court's finding that an attempt to commit the crime of larceny from a person was not an attempt to commit a crime by force. Noting that the trial court seemed to have confused force with violence, the court stated:

". . . Force, in legal contemplation, does not always mean physical violence. Thus, in prosecutions for assault and battery, any touching of the person or clothing of another in anger, or even spitting upon another, constitutes a battery. In legal contemplation such touching for a hostile or wrongful purpose is the application of force. 1 Wharton, Cr. Law (10th ed.), sec. 617. The law can draw no line between the different degrees of force. 2 Am. & Eng. Ency. Law (2d ed.), 959. So, in burglary, an entry into the building, obtained by fraud, is deemed a forcible *breaking,* though accompanied by no actual force or violence."

Here the evidence clearly shows that defendant entered the Turner home by forcibly removing an outer screen, raising the kitchen window and crawling through over the sink. Although defendant apparently did not actually damage the premises as was done by the defendants in the three cases discussed in *Barclay,* this fact would hardly indicate that his visit was intended to be casual

or friendly. On the contrary, defendant's silent and non-violent entry is even more consistent with an intent to avoid waking the sleeping occupants of the house.

The fact that the premises entered was a private residence rather than a business or restaurant establishment is immaterial. It has been previously noted by the court that "one who breaks into a private dwelling may more readily be found to have a felonious intent than one who breaks and enters into a public building." *Raymond v. State*, 55 Wis.2d 482, 486, 198 N.W.2d 351 (1972); *Galloway v. State*, 32 Wis.2d 414, 422, 145 N.W.2d 761, 147 N.W.2d 542 (1966). Certainly, household appliances and valuables are as likely prizes for the would-be burglar as anything that would be found in a business establishment. More importantly, the likelihood of an alarm or the need for special tools may very well be less.

We also find insignificant the fact that defendant did not flee when first discovered. Few burglars would find detection by a fifteen-year-old girl so intimidating that they would flee out of fear. And even after the girl's seventeen-year-old sister and mother appeared on the scene, it is not unreasonable to assume defendant felt quite capable of handling the situation. When Mr. Turner finally descended the stairs defendant did make a move toward the door. Whether his failure to actually flee at that point was due to the threat posed by Mr. Turner, armed with a knife and club, or to a strategic conclusion that he would be better off not running, it certainly does not demonstrate that his intentions were innocent in entering the house in the first place. Any such inference of innocence that could arise from defendant's failure to flee was effectively destroyed by his attempt to do so when he finally realized the police had been summoned.

In addition, like prior cases involving burglaries where the finding of intent to steal has been upheld, the entry

in this case was made during the early morning hours and in such a manner that the likelihood of discovery and interruption was at a minimum.

If this case differs at all from our earlier cases on this question, it is in that here there is an added circumstance from which the intent to steal could be inferred. More than any of the defendants in the cases analyzed in *State v. Barclay, supra,* 54 Wis.2d 651, defendant in this case had a strong motive to commit burglary.[3] By his own admission, he was desperate. He had been stranded in a strange city in the middle of the night and had to get to Milwaukee. Trapped in such circumstances the need for transportation or money is apparent. The likelihood that either or both would be available at that time of day from a private residence is also apparent.

Although motive, like all the evidence relied upon by the state to show defendant's intent, is entirely circumstantial, it does not follow, for that reason alone, that it is less probative. "Often times circumstantial evidence is stronger and more satisfactory than direct evidence." *Clark v. State,* 62 Wis.2d 194, 197, 214 N.W.2d 450 (1974). "However, when circumstantial evidence is relied upon, this evidence must be sufficiently strong to exclude every reasonable hypothesis of innocence." *Peters v. State,* 70 Wis.2d 22, 34, 233 N.W.2d 420 (1975). It need not exclude every hypothesis of innocence, but only every reasonable hypothesis. *Austin v. State,* 86 Wis.2d 213, 220, 271 N.W.2d 668 (1978).

We believe the trial court was correct in concluding that the evidence presented by the state was sufficient

---

[3] While motive does not by itself establish guilt or innocence, it is "an evidentiary circumstance which may be given as much weight as the fact finder deems it entitled to." *State v. Berby,* 81 Wis.2d 677, 686, 260 N.W.2d 798 (1978).

to support the inference that defendant entered the Turner residence with intent to steal. From evidence in the record before us, no other reasonable hypothesis is possible.

Defendant argues that his actions support the theory that he entered the residence not with intent to steal, but with intent to commit sexual assault, and that, therefore, with respect to the crime with which he was charged, this theory is consistent with his innocence. We disagree. Assuming, *arguendo,* that defendant is correct in his contention that the state's inability to prove which of the two criminal intents he possessed when he entered the residence precludes his conviction altogether, there is absolutely no evidence that he had any knowledge of who was in the house when he entered it. Although defendant's conduct after being discovered by Claudette Turner may evidence an intent to commit sexual assault, it is his intent upon entry that governs. In light of defendant's admitted unfamiliarity with the area and his desperate desire to get back to Milwaukee, the hypothesis of "innocence" asserted here appears unreasonable.

The trial court was also justified in rejecting defendant's claim that he broke into the Turners' residence merely to ask directions to Milwaukee. Though not excluded by the evidence, this explanation of defendant's conduct is patently absurd and is certainly not such as would preclude the trial court's finding of guilt. Under these circumstances we are unable to say that no trier of fact, acting reasonably, could find defendant guilty beyond a reasonable doubt. We therefore reinstate the judgment of the trial court.

*By the Court.*—Judgment reversed. Cause remanded for reinstatement of the judgment of conviction.