# ROBERT LEE GRAY *v.* STATE OF MARYLAND

[No. 1277, September Term, 1976.]

*Decided July 8, 1977.*

The cause was argued before GILBERT, C. J., and POWERS and MENCHINE, JJ.

*Geraldine Kenney Sweeney, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, State's Attorney for Prince George's County,* and *Robert C. Bonsib, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

On October 22, 1976, Robert Lee Gray was convicted by a jury in the Circuit Court for Prince George's County on charges of (a) robbery with a dangerous and deadly weapon and (b) carrying a deadly weapon openly with intent to injure another. He was sentenced to imprisonment for concurrent terms of twelve and three years respectively.

On September 21, 1976, Gray had filed a motion to dismiss the indictment against him upon grounds of double jeopardy. His motion alleged that the *sua sponte* declaration of a mistrial on August 25, 1975, during the course of an earlier trial for the offenses was not compelled by manifest necessity and constituted a bar to further prosecution.

On October 15, 1976, the trial judge conducted a hearing upon the motion to dismiss. At the conclusion of the hearing the trial judge declared: "I am going to examine the authorities and will take the matter under advisement."

On October 22, 1976, prior to the commencement of the trial below, defense counsel asked the court to rule on the motion to dismiss for double jeopardy. The trial judge responded as follows: "I will keep that matter under advisement and rule at the conclusion of the case." Trial then proceeded, with conviction and sentence resulting.

Appellant urges that the action of the trial judge in deferring decision upon the double jeopardy motion constituted reversible error. We agree.

No doubt remains that an immediate appeal lies from denial of a motion to dismiss grounded upon a claim of double jeopardy. *Neal v. State*, 272 Md. 323, 322 A. 2d 887 (1974). In *Taylor v. State*, 22 Md. App. 370, 372, 323 A. 2d 648, 650 (1974), we said:

> "The express message of the Court of Appeals in *Neal* is unmistakable. A denial of a motion to dismiss an indictment on the ground of double jeopardy is appealable immediately."

Our language in *Taylor, supra*, a case involving alleged speedy trial rights — not double jeopardy — apparently has caused some misunderstanding among trial judges. We had said at 372-73 [650]:

> "The underlying message of *Neal* is equally unmistakable, *i.e.*, our decision in *Neal v. State* with respect to the holding that a denial of a motion to dismiss for lack of speedy trial is interlocutory and thus not immediately appealable is still viable."

It shortly became apparent that what was believed to be a clarion call for pre-trial determination by trial judges confronted by a double jeopardy motion to dismiss, did not ring out loud and clear.

In *Claybrooks v. State*, 36 Md. App. 295, 374 A. 2d 365 (1977), we said at 301:

> "Our observation in *Taylor* seems to have been misinterpreted by the trial judge in the instant case. We did not imply, suggest, nor hint that Md. Rule 725 d was to be used as an artifice to circumvent the holding of the Court of Appeals in *Neal*. Indeed, Rule 725 d is not a vehicle to thwart *Neal* and thus effectively erode its clear mandate. By the mere deferring of a ruling on a motion to dismiss grounded on former jeopardy, the constitutional barrier, erected by our founding fathers, would be no barrier at all. Rather, it would be relegated to the status of a high sounding

phrase, devoid of substance and 'signifying nothing.' "

We now reiterate the rule when, prior to a second trial, the trial court is confronted by a motion to dismiss the indictment upon the ground of double jeopardy:

The trial judge *must* rule upon the motion *prior* to the commencement of the second trial.

If the motion to dismiss is denied, an immediate appeal lies.

The reason why such a course *must* be followed is explicated with great clarity by the Supreme Court in the very recent case of *Abney v. United States*, 431 U. S. 651, 97 S. Ct. 2034, 52 L.Ed.2d 651, No. 75-6521, decided June 9, 1977, in the following language:

> "Finally, the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. To be sure, the Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment, as the Government suggests. However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to *trial* for the same offense.
>
> > " 'The Constitution of the United States, in the Fifth Amendment, declares, "nor shall any person be subject [for the same offense] to be twice put in jeopardy of life or limb." The prohibition is not against being twice punished, but against being twice *put* in jeopardy . . . .' . . . The 'twice put in jeopardy' language of the

Constitution thus relates to a potential, *i. e.*, the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried." *Price v. Georgia*, 398 U.S. 323, 326 (1970).

See also *United States v. Jorn*, 400 U.S. 470, 479 (1971); *Green v. United States*, 355 U.S. 184, 187-188 (1957); *United States v. Ball*, 163 U.S. 662, 669 (1896). Because of this focus on the 'risk' of conviction, the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense. It thus protects interests wholly unrelated to the propriety of any subsequent conviction. Justice Black aptly described the purpose of the clause:

> 'The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' *Green, supra*, at 187-188.

Accord, *Breed v. Jones*, 421 U.S. 519, 529-530 (1975); *Serfass v. United States*, 420 U.S. 377, 387-388 (1975); *Jorn, supra*, at 479. Obviously, these aspects of the guarantee's protections would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken; even if the

accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." (Footnotes omitted.)

It is true that in *Claybrooks, supra,* we affirmed the judgments of conviction even though the trial judge had reserved decision upon the double jeopardy issue until after the conviction of the accused. We stressed that we had done so under the doctrine of harmless error, *Chapman v. California,* 386 U. S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967); *Dorsey v. State,* 276 Md. 638, 350 A. 2d 665 (1976), saying at 301:

"We believe such error ordinarily to be reversible. We say 'ordinarily' because there is an exception. The exception arises when the motion is based on a claim that is patently frivolous. When that occurs, although there is error, it is not reversible, but harmless. To hold otherwise would permit any defendant, in any criminal cause, to move to dismiss on the grounds of double jeopardy, even though there is no basis, and when the motion is decided against him, to divest the trial court of jurisdiction by simply noting an appeal. Such a practice could be used to obtain a continuance, a severance of the case from that of another, and probably would cause an appellate logjam. The constitutional protection against double jeopardy should not be allowed to become a contrived *pro forma* dilatory plea."

We now stress, however, that the decision whether such a claim is patently frivolous must be made by the appellate

and not by the trial court. Our examination of the record shows that the motion is not patently frivolous.[1]

We stress as well that a decision denying the claim of double jeopardy is immediately appealable if the accused elects to follow such a course, and that such an election by the accused would divest the trial court of jurisdiction to proceed with the substantive trial. Unless such an election is made upon the record prior to the commencement of the substantive trial, however, the right to *immediate* appeal shall be deemed to have been waived. In the latter case, of course, appellate review of the issue may be had if conviction results.

Because the judgments must be vacated and the case remanded for a decision upon the double jeopardy issue, we do not reach the issues raised with respect to the substantive trial. Our holding makes that trial a nullity.

> *Judgments vacated and case remanded for decision upon the issue of double jeopardy, either upon the record made below upon that issue or after a new hearing thereon, at the option of the appellant.*
>
> *Costs to be paid by Prince George's County.*

---

[1] We shall not consider the merits of the claim of double jeopardy in this appeal, believing that to do so might lessen the impact of our decision that the trial court *must* rule upon such a claim prior to trial.