STATE, Plaintiff-Respondent, v. JENICH, Defendant-Appellant-Petitioner.†

Supreme Court

*No. 79–272 CR. Argued December 5, 1979.—
Decided February 7, 1980.*
(Also reported in 288 N.W.2d 114.)

† Motion for reconsideration granted on April 8, 1980.

75a

For the appellant-petitioner there was a brief by *Robert G. LeBell* and *Carter, Finn & LeBell, S.C.,* and oral argument by *Daniel R. Heiden,* all of Milwaukee.

For the respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

SHIRLEY S. ABRAHAMSON, J.   On February 26, 1979, George Jenich, the defendant, filed a notice of appeal to the court of appeals from an order of the circuit court denying his motion to dismiss the criminal complaint on the ground that a second trial would place him twice in jeopardy contrary to the federal and Wisconsin constitutions.[1]   Upon motion of the State, the court of appeals dismissed defendant's appeal, concluding that the order appealed from was not an order appealable as of right.  The court of appeals refused, on its own motion, to grant defendant additional time in which to seek leave to appeal.  The court of appeals, in effect, treated the defendant's notice of appeal as a request for leave to appeal and then refused to grant leave to appeal.  The court of appeals concluded upon review of the record and defendant's brief that although former jeopardy provisions are intended to prohibit a second trial, under the appropriate circumstances, and not merely to serve as a basis for reversal of a subsequent conviction, "the issue raised has such doubtful merit that it is unlikely that subjecting the defendant to

---

[1] The Fifth Amendment to the United States Constitution provides:

"No person shall be . . . subject for the same offense to be twice put in jeopardy of life and limb."

A similar provision is found in Art. I, sec. 8, of the Wisconsin Constitution, which reads:

". . . no person for the same offense shall be put twice in jeopardy of punishment, . . . ."

trial at this time would cause him substantial or irreparable injury."

We granted defendant's petition to review the decision of the court of appeals that the order of the circuit court was not a final order appealable as of right. A decision by the court of appeals that an order is not appealable as a matter of right is a decision reviewable by this court upon a petition to appeal.[2]

Defendant asserts on appeal that the court of appeals erred in dismissing his appeal and that the circuit court

[2] Sec. 808.10, Stats., provides for review of a decision of the court of appeals by the supreme court:

"808.10 **Review by the supreme court.** A decision of the court of appeals is reviewable by the supreme court only upon a petition to appeal granted by the supreme court. The petition to appeal shall be filed in the supreme court within 30 days of the date of the decision of the court of appeals."

We have previously had occasion to consider what decisions of the court of appeals are reviewable by this court on a petition to appeal. As we noted in *In the Interest of A. R.*, 85 Wis.2d 444, 270 N.W.2d 581 (1978), although sec. 808.10 does not define the word "decision," the definition of decision set forth in sec. 752.41 (1), Stats., is applicable. Sec. 752.41(1), Stats., states:

"Decisions. (1) In each case, the court of appeals shall provide a written opinion containing a written summary of the reasons for the decision made by the court."

We have interpreted the term "decision" to be a decision of the court of appeals which finally determines that matter presented. When the parties agree that the order of the circuit court is not a final order appealable as of right, this court ordinarily will not review the court of appeals' exercise of its discretion whether to hear the appeal. We concluded in *State v. Whitty*, 86 Wis.2d 380, 388, 272 N.W.2d 842 (1978), that "[i]n the usual case, an order of the court of appeals denying permission to appeal from a nonappealable order, is not reviewable in this court because it is not a decision finally disposing of the case." However, where the parties dispute as to whether the circuit court's order is a final order appealable as of right, a decision by the court of appeals that an order is not a final order which may be appealed as a matter of right to the court of appeals is a decision reviewable by this court upon a petition to appeal.

erred in not dismissing the charges because of double jeopardy.

We conclude that the court of appeals erred in not hearing the appeal, and we further conclude that the order of the circuit court should be affirmed.

## I.

We turn first to the question whether a pretrial order denying a motion to dismiss based on double jeopardy is appealable as of right to the court of appeals.

Sec. 808.03, Stats., provides for appeals to the court of appeals as of right and by permission. Sec. 808.03 governs appeals as of right in civil and in criminal cases:[3]

"(1) APPEALS AS OF RIGHT. A final judgment or a final order of a circuit court or county court may be appealed as a matter of right to the court of appeals unless otherwise expressly provided by law. A final judgment or final order is a judgment or order entered in accordance with s. 806.06(1)(b) or 807.11(2) which disposes of the entire matter in litigation as to one or more of the parties, whether rendered in an action or special proceeding.

"(2) APPEALS BY PERMISSION. A judgment or order not appealable as a matter of right under sub. (1) may be appealed to the court of appeals in advance of a final judgment or order upon leave granted by the court if it determines that an appeal will:

"(a) Materially advance the termination of the litigation or clarify further proceedings in the litigation;

---

[3] Sec. 808.03, Stats., is substantially similar to Standard 3.12, American Bar Association Standards Relating to Appellate Courts (1977). For limiting the defendant's right to review to a final judgment adverse to him, see Standard 1.3, American Bar Association Standards Relating to Criminal Appeals (1970).

An appeal by a defendant in a criminal case is regulated not only by sec. 808.03 but also by sec. 974.02(1), Stats., which states that an appeal taken to the court of appeals by the defendant in a criminal case must be taken in the time and manner provided in Rule 809.30, Stats. See also sec. 974.05, Stats., relating to an appeal by the state in a criminal case.

"(b) Protect the petitioner from substantial or irreparable injury; or

"(c) Clarify an issue of general importance in the administration of justice."

The question of what orders and judgments are final for purposes of appellate review is a recurring question of statutory interpretation.[4] The final judgment—final order rule is designed to prohibit piecemeal disposal of litigation and thus plays an important role in the movement of cases through the judicial system. Historically courts have, however, placed qualifications on the rule where the need for immediate review outweighs the purposes of the rule.

The defendant urges us to adopt the reasoning of the United States Supreme Court in *Abney v. United States,* 431 U.S. 651 (1977), and to treat this order as a final order. In *Abney* the United States Supreme Court held that pretrial orders rejecting claims of former jeopardy are "final decisions" under the federal statutes[5] and are therefore immediately appealable as of right because the order satisfied three criteria.

First, the order denying the double jeopardy claim finally and completely determines a claim of right; the trial court has rejected the double jeopardy claim. Second, the double jeopardy claim is separable from, collateral to and independent of the principal issue at trial, namely the guilt of the accused of the crime charged.

Third, the double jeopardy rights asserted are too important to be denied review. The United States Su-

---

[4] Martineau and Malmgren, *Wisconsin Appellate Practice,* secs. 401–404 and 2702 (1978).

[5] Although there are constitutional overtones in the opinion, we do not interpret the *Abney* decision as holding that immediate appellate review of a pretrial order denying a motion to dismiss on double jeopardy grounds is required by either double jeopardy or due process principles. *Abney* was decided on the basis of federal statutes governing federal appellate jurisdiction.

preme Court recognized that if the accused were forced to face a second trial, without review of his double jeopardy claim, the accused would lose the full protection of constitutional rights even if there were an acquittal at the second trial or the conviction at the second trial were reversed on double jeopardy grounds. The Court said that "if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs."

We recognize, as did the United States Supreme Court in *Abney,* that interlocutory or piecemeal appeals are undesirable, especially in criminal prosecutions. The delays caused by piecemeal appeals are "inimical to the effective and fair administration of the criminal law." *DiBella v. United States,* 369 U.S. 121, 126 (1962). At the same time we recognize that the double jeopardy provisions protect an accused not only against being twice subjected to punishment but also against being twice put to trial for the same offense. In *Green v. United States,* 355 U.S. 184, 187–188 (1957), Mr. Justice Black described the purpose of the clause as follows:

"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (Quoted with approval, *Abney v. United States,* 431 U.S. at 661–662.)

In *Berry v. State,* 90 Wis.2d 316, 324, 280 N.W.2d 204 (1979), this court similarly viewed the double jeopardy protection:

"The key to invoking double jeopardy protection is not simply whether a defendant, as in the present case, can point to a prior verdict or judgment of acquittal, but whether the defendant might be subjected to multiple prosecutions."

Three members of the court are persuaded by the reasoning of the *Abney* case and hold that a pretrial order denying a motion to dismiss based on double jeopardy is a final order and the defendant may, before the new trial is held, appeal that order "as a matter of right to the court of appeals" pursuant to sec. 808.03(1), Stats.[6] To prevent defendants from engaging in dilatory appeal tactics, the court of appeals should establish procedures requiring the parties and the court to give the appeal expedited treatment.[7]

---

[6] *Cf. State v. Bagnall,* 61 Wis.2d 297, 302, 212 N.W.2d 122 (1973):

"The basic issue is whether the granting of a motion to withdraw a guilty plea is in its nature a final order appealable by the state under sec. 974.05(1)(a), Stats. Jeopardy is waived by the entry of a motion to withdraw a guilty plea and the order is certainly adverse to the state. The only debatable element is whether such an order has the requisite finality.

"While it is generally true that to be final an order must dispose of the whole matter in litigation, it is also true that an order is appealable where even though it does not dispose of the entire subject matter in litigation it does terminate a particular proceeding or action. The order here terminates the guilty plea proceeding which is separate enough from the trial which may result to warrant being held a final order and therefore appealable under sec. 974.05(1)(a), Stats." (Notes omitted.)

[7] In holding that the court of appeals must review an order denying the defendant's motion to dismiss on double jeopardy grounds, we do not require the court of appeals to review other claims made in defendant's brief. In the case at bar, the defendant did not appeal from an order denying his motion to dismiss on the grounds of denial of right to speedy trial. His brief discusses this question but it is not before the court.

Justice Callow and the author of this opinion would reach a result similar to the one reached by our colleagues, but by a different route. We would hold that this appeal does not come within sec. 808.03 (1) but falls within sec. 808.03 (2), Stats., an appeal by permission of the court of appeals; that ordinarily sec. 808.03 (2), Stats., envisions the court of appeals looking at the equities of each individual case to determine whether the aggrieved party should be allowed to obtain appellate review of a non-final order; that it is not necessary for the court of appeals to exercise its discretion on the basis of each case in this type of order; that for the reasons set forth in *Abney,* every order denying a motion to dismiss based on double jeopardy falls within the criteria of sec. 808.03 (2), Stats., for granting leave to appeal; and that therefore the court of appeals should grant every petition for leave to appeal such an order as a matter of course. Justice Callow and I would, therefore, pursuant to this court's superintending and administrative authority[8] and in order to expedite court processes and to further justice, direct the court of appeals (1) to grant each defendant leave to appeal from a pretrial order denying a motion to dismiss on double jeopardy grounds as a matter of course if the defendant elects to petition the court of appeals in the time and manner provided in Rule 809.50, Stats.;[9] and (2) to establish pro-

[8] Art. VII, sec. 3 (1) of the Wisconsin Constitution provides: "The Supreme Court shall have superintending and administrative authority over all courts."

In *Hortonville Ed. Asso. v. Joint School Dist. No. 1,* 66 Wis.2d 469, 497, 225 N.W.2d 658 (1975), quoted with approval in *In Interest of D. H.,* 76 Wis.2d 286, 294, 251 N.W.2d 196 (1977) we said: "When an adequate remedy or forum does not exist to resolve disputes or provide due process, the courts, under the Wisconsin Constitution, can fashion an adequate remedy."

[9] "809.50 *Rule* (Appeal from judgment or order not appealable as of right). (1) A person shall seek leave of the court to appeal a judgment or order not appealable as of right under s. 808.03 (1),

cedures requiring the parties and the court to give the appeal expedited treatment.[10]

## II.

We turn now to the merits of defendant's claim that a further prosecution is barred by the double jeopardy clauses of the state and federal constitutions. Jeopardy had attached at the time the mistrial was declared because the jury had been selected and sworn. Sec. 972.07, Stats.;[11] *Crist v. Bretz,* 437 U.S. 28 (1978). Although jeopardy had attached, the trial did not end in a conviction or an acquittal. Whether further prosecution is per-

by filing within 10 days of the entry of the judgment or order a petition and supporting memorandum, if any. The petition must contain:

"(a) A statement of the issues presented by the controversy;

"(b) A statement of the facts necessary to an understanding of the issues; and

"(c) A statement showing that review of the judgment or order immediately rather than on an appeal from the final judgment in the case or proceeding will materially advance the termination of the litigation or clarify further proceedings therein, protect a party from substantial and irreparable injury, or clarify an issue of general importance in the administration of justice.

". . . ."

[10] Other states have divided on whether to grant immediate appellate review to orders denying motions to dismiss on double jeopardy grounds. *See State v. Fisher,* 2 Kan. App.2d 353, 579 P.2d 167 (1978); *People ex rel. Mosley v. Carey,* 74 Ill.2d 527, 387 N.E.2d 325 (1979); *Gray v. State,* 36 Md. App. 708, 375 A.2d 31 (1977); *County Court In and For The County of El Paso v. Ruth,* 575 P.2d 1 (Colo. 1978); and *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (Pa. 1977).

[11] "972.07 *Jeopardy.* Jeopardy attaches:

"(1) In a trial to the court without a jury when a witness is sworn;

"(2) In a jury trial when the selection of the jury has been completed and the jury sworn."

missible depends on the facts and circumstances of the case.

A brief description of the context in which a mistrial was declared by the circuit court follows: The defendant was charged in a criminal complaint dated April 11, 1977 with conspiracy to deliver marijuana in violation of secs. 939.31, 161.14(4)(k) and 161.41(1)(b), Stats. At the preliminary examination in September, 1977, and at a hearing on a motion to suppress in February, 1978, the defendant was represented by Attorney Carter and Attorney Schaefer and the State was represented by Assistant District Attorney Lowe. After several continuances, a pretrial conference was scheduled for October 16, 1978, and the jury trial for October 17, 1978. On October 17, 1978, Attorney Carter and Attorney Piano represented the defendant; Assistant District Attorney Molitor stated that he appeared on behalf of the State. Assistant District Attorney Lowe stated that he appeared specially and requested to make a statement.

Assistant District Attorney Lowe requested an adjournment of the trial to permit Assistant District Attorney Molitor to prepare for trial. Assistant District Attorney Lowe explained that until about ten days prior to the trial date he had been assigned to prosecute the case and he had been involved in all the stages of the proceedings. He stated that Attorney Piano had informed him about ten days earlier that Attorney Piano would be assisting Attorney Carter as defense counsel. Assistant District Attorney Lowe stated that he was a candidate for circuit judge in Milwaukee County and that Attorney Piano was co-manager of the campaign. Assistant District Attorney Lowe stated that he thought that he should withdraw from participation in the prosecution of the case because of the appearance of impropriety. Because the case had been assigned to Assistant District Attorney Molitor on the day preceding trial,

Assistant District Attorney Lowe asked that the state be given more time to prepare the case. The State acknowledged that defense counsel had gone to great trouble to secure the presence of witnesses for the trial and that an adjournment would inconvenience counsel and the court. Assistant District Attorney Molitor requested a short adjournment, perhaps of one week, because he did not feel he would be doing the State or the community a service in prosecuting the case with such little preparation. He said he had also noticed from the file that perhaps two or three essential witnesses had not been subpoenaed, one of which was an officer who was on vacation until the following day.

Defense Attorney Piano stated that he had represented the defendant previously and that he was well acquainted with the case. He stated that if the court adjourned the matter, his schedule was such that he could not try the case until after the end of December, 1978, and that although witnesses had been subpoenaed for this trial, the defendant would not object to or request an adjournment.

Attorney Carter stated that his schedule was too full for the rest of that year for a trial of this length, but that in proceeding to trial with the State being represented by a lawyer who had not had time to prepare the case "there is a substantial risk that either justice will not be served or possibly even that something will happen to create a mistrial."

The circuit court noted that a long time had elapsed in bringing this case to trial and that there had been no indication at the pretrial conference on the previous day that there might be a request for an adjournment. The circuit court recognized that ten days was not a long enough period of time in which to reassign the case in the district attorney's office. However, the circuit court denied the request for adjournment because no request had been made at the pretrial conference; re-

scheduling the trial in the near future did not appear possible; there was extreme inconvenience and cost to the parties to again subpoena witnesses from New York and California; and justice required that "old cases" be tried promptly.

The circuit court commented that it did not think the "political" relationship between counsel for the state and for the defense would reduce their ability to perform their duties and concluded that "the need to maintain efficient administration of justice outweighs the appearance of potential conflict, which I do not believe actually exists, and therefore, I think that to grant an adjournment would be inappropriate." The circuit court asked Assistant District Attorney Lowe to exercise his independent judgment as to the degree of his participation in the trial.

The circuit court invited the attorneys to submit proposed voir dire questions which on the previous day the court had asked the lawyers to prepare. The defense submitted proposed questions, and the State submitted a hand written list of areas of concern. At one point the State took a twenty-minute recess to write its proposed voir dire questions.

After the circuit court discussed and revised the questions with counsel, Assistant District Attorney Lowe said he wanted to note that:

"The Court has been submitted 44 questions by the defendant, it accepted 38 of those questions without modification. The State submitted 14 questions and I don't think three got by without modification."

The circuit court responded:

"I think, Counsel, that that does not reflect on a bias on the part of the Court. It may reflect on the fact that the defendant submitted theirs in writing, typed up, dictated, well-thought out, rather than to show up on the day of trial and then ask for a recess of twenty

minutes to draft their questions. I'm sure had your questions arrived in a form similar to Mr. Piano's and Mr. Carter's, probably they would have been thought out and any modifications might have been unnecessary."

The circuit court began questioning the jury panel to determine whether any potential juror was related to or acquainted with the defendant, the attorneys and the prospective witnesses. Assistant District Attorneys Molitor and Lowe were introduced as representing the State. The circuit court asked Assistant District Attorney Lowe to introduce prospective witnesses for the State and Assistant District Attorney Lowe stated:

". . . Your Honor, I think the jury should know that Mr. Molitor will be handling this case and I will be associating because it may become necessary for me to become a witness in this matter and, therefore, Mr. Molitor will be handling it. But the State may call the following witnesses. If you recognize any of these names, would you please raise your hands. . . ."

After further questions, the jury and the alternates were chosen.

After the jury left the courtroom, Attorney Carter questioned the propriety of Assistant District Attorney Lowe's stating that Lowe was a potential witness in the case. Attorney Carter said that Assistant District Attorney Lowe's statement came as a complete surprise because Lowe's name was not on the list of witnesses supplied to the defense. Attorney Carter suggested that the Code of Professional Responsibility[12] required Lowe

---

[12] *See* SCR 20.24 and SCR 20.25 which restate DR 5-101 and DR 5-102 of the Code of Professional Responsibility:

"**SCR 20.24 Refusing employment when the interests of the lawyer may impair his or her independent professional judgment.** (1) Except with the consent of the client after full disclosure, a lawyer may not accept employment if the exercise of his or her professional judgment on behalf of the client will be or reasonably

to withdraw from the case and that if Lowe testified, a mistrial would have to be declared.  Assistant District

may be affected by his or her own financial, business, property or personal interests.

"(2) A lawyer may not accept employment in contemplated or pending litigation if he or she knows or it is obvious that he or she or a lawyer in his or her firm ought to be called as a witness, except that the lawyer may undertake the employment and the lawyer or a lawyer in the firm may testify:

"(a) If the testimony will relate solely to an uncontested matter.

"(b) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

"(c) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the firm to the client.

"(d) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or the firm as counsel in the particular case."

"SCR 20.25  **Withdrawal as counsel when the lawyer becomes a witness.**  (1) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or she or a lawyer in his or her firm ought to be called as a witness on behalf of his or her client, the lawyer shall withdraw from the conduct of the trial and the firm, if any, may not continue representation in the trial, except that the lawyer may continue the representation and the lawyer or a lawyer in the firm may testify in the circumstances enumerated in SCR 20.24 (2) (a) to (d).

"(2) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in the firm may be called as a witness other than on behalf of the client, the lawyer may continue the representation until it is apparent that his or her testimony is or may be prejudicial to the client."

*See* SCR 20.23(2) (h) and (i), which restate Ethical Considerations EC 5-9 and EC 5-10 of the Code of Professional Responsibility:

"(h) Occasionally a lawyer is called upon to decide in a particular case whether he or she will be a witness or an advocate. If a lawyer is both counsel and witness, he or she becomes more

Attorney Lowe stated that he had told the jurors that he was a potential witness and that "for that reason I was not taking an active role in the presentation of the witnesses on the stand." He noted that he might be called "on the issues of the John Doe if they are raised during this trial."

The circuit court indicated it would hear additional arguments in this matter the following morning. The jury returned to the courtroom and was sworn and given

---

easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his or her own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

"(i) Problems incident to the lawyer-witness relationship arise at different stages, they relate either to whether a lawyer should accept employment or should withdraw from employment. Regardless of when the problem arises, his or her decision is to be governed by the same basic considerations. It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he or she will be called as a witness because his or her testimony would be merely cumulative or if his or her testimony will relate only to an uncontested issue. In the exceptional situation where it will be manifestly unfair to the client for the lawyer to refuse employment or to withdraw when he or she will likely be a witness on a contested issue, he or she may serve as advocate even though he or she may be a witness. In making such decision, he or she should determine the personal or financial sacrifice of the client that may result from his or her refusal of employment or withdrawal therefrom, the materiality of his or her testimony and the effectiveness of his or her representation in view of his or her personal involvement. In weighing these factors, it should be clear that refusal or withdrawal will impose an unreasonable hardship upon the client before the lawyer accepts or continues the employment. Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his or her becoming or continuing as an advocate."

pretrial instructions. Assistant District Attorney Lowe's request that the opening statement be postponed until the following morning was denied. Assistant District Attorney Molitor presented the State's opening statement to the jury, and the court recessed until the following morning, October 18, 1978.

On October 18, 1978, out of the presence of the jury, Attorney Carter presented his research on the issue of an attorney being a witness. Assistant District Attorney Molitor responded that Assistant District Attorney Lowe was only assisting him in the case, that the State did not plan, at that time, to call Lowe as a witness, and that the defense had not indicated that it would call Lowe as a witness. The circuit court asked Assistant District Attorney Lowe to state whether he would be a witness. Lowe stated that he was not going to be a witness for the State, but he did not know if he would be called by the defense.

Attorney Carter asserted that Assistant District Attorney Lowe's statement to the jury that it might be necessary for him to be a witness had already damaged the defendant and prejudiced the jury's mind, especially because the jury had been instructed that the State is not required to use all of its witnesses. The defense thought that Assistant District Attorney Lowe's statement to the jury added credibility to the State's case and that the defense would not be able to cross-examine Lowe as to credibility. Assistant District Attorney Molitor suggested that the circuit court give a "curative instruction to the jury that perhaps Mr. Lowe was mistaken, he will not be called as a witness in this case," in order to "obviate any impropriety, if there has been one." Attorney Carter argued that no instruction could cure the damage, and he requested the circuit court to declare a mistrial. If a mistrial was not declared, Attorney Carter requested the court that Assistant District Attorney Lowe not participate in the case.

The circuit court reviewed the applicable sections of the Code of Professional Responsibilities and stated that "Mr. Lowe's representation to the jury yesterday, that he may be called as a witness, was a matter that under normal sets of circumstances would . . . compel his necessity to withdraw." However, the court did not believe that Lowe's "mere announcement that he might be a witness" had a prejudicial effect. After additional discussion on what curative instruction, if any, the circuit court should give, the parties requested a conference with the judge which was held off the record. After the conference the circuit court told the jury that it had declared a mistrial for complicated legal reasons and that the matter would be rescheduled and retried after they had completed their service as members of the jury.

After the jury was excused and left the courtroom, the circuit court explained on the record the reasons for declaring a mistrial: that the defense had moved for a mistrial because of Assistant District Attorney Lowe's statement to the jury that he might be a witness; that it was determined that a curative instruction would not be an appropriate remedy; that the only option would have been to compel Assistant District Attorney Lowe to withdraw from participation in the case; and that this alternative was not viable because Assistant District Attorney Molitor was unfamiliar with this complicated case.

Attorney Carter stated on the record that the defense did not believe there was any prosecutorial misconduct in this case and that the unforeseen circumstances leading to the mistrial had begun about ten days before the trial began.

A second trial was scheduled for February 27, 1979, and on February 21, 1979, the defense filed two motions to dismiss, one on the basis of denial of right to speedy trial, and the other on the basis of double jeopardy.

At the pretrial conference on February 26, 1979, the circuit court issued a written order denying the motion to dismiss on the basis of double jeopardy, and on the same day, the defendant filed a notice of appeal from the order to the court of appeals.

In cases where the defendant affirmatively moves for a mistrial, as in the case at bar, and the proceedings are terminated at defendant's request and with his consent, the general rule is that the double jeopardy protection is not a bar to reprosecution. The defendant, by seeking a mistrial has surrendered his "valued right" to secure a verdict from the first tribunal. However, if defendant's motion for mistrial is prompted by prosecutorial or judicial misconduct which was intended "to provoke" defendant's motion or was otherwise "motivated by bad faith or undertaken to harass or prejudice" the defendant or "to afford the prosecution a more favorable opportunity to convict" the defendant, double jeopardy does bar further prosecution. *See, e.g., Lee v. United States,* 432 U.S. 23, 33 (1977); *United States v. Dinitz,* 424 U.S. 600, 611 (1976); *United States v. Jorn,* 400 U.S. 470, 485 (1971); *United States v. Tateo,* 377 U.S. 463, 467 (1964); *State v. Harrell,* 85 Wis.2d 331, 335, 270 N.W.2d 428 (Ct. App. 1978). If the defendant's motion for a mistrial is prompted by prosecutorial error made in the exercise of good faith and professional judgment, there generally is no bar to retrial. *State v. Calhoun,* 67 Wis.2d 204, 225, 226 N.W.2d 504 (1975).[13]

The defendant asserts that the prosecutor deliberately forced a mistrial in this case in an effort to gain more time. Defendant bases his assertion on the fact that the

[13] For a discussion of mistrial and double jeopardy, *see* Schulhofer, *Jeopardy and Mistrials,* 125 U. Penn. L. Rev. 449 (1977); Rosenzweig, *Mistrials & Double Jeopardy,* 15 Am. Cr. L. Rev. 169 (1977); Beeny, *Double Jeopardy Consequences of Mistrial, Dismissal & Reversal of Conviction on Appeal,* 16 Am. Cr. L. Rev. 235 (1979).

prosecutor asked for an adjournment which was denied. The prosecution could have thought that it had less likelihood of convicting the defendant with an "unprepared" assistant district attorney prosecuting the case, but there is no indication in the record that Assistant District Attorney Lowe made the statement to the jury with the intent of provoking a mistrial in order to gain time and a more favorable opportunity to convict the defendant. The defendant attempts to prove that Assistant District Attorney Lowe deliberately prejudiced the jury by arguing that the record shows that the State either never intended to call Lowe as a witness (Lowe was not on the list of witnesses) or that the State did intend to call Lowe as a witness but used this technique in order to have Lowe continue to participate as a prosecuting attorney. The record does not support either theory. The record shows that Assistant District Attorney Lowe apparently thought in good faith that he might be called as a witness, and that if there was to be no adjournment he was required to take a limited role at trial.

■ The assistant district attorney's informing the jury that he might be a witness, even if it constituted error, was not the product of "prosecutorial overreaching" as that phrase has been interpreted in prior decisions; the prosecutor's conduct was certainly not so patently baseless as to lead us to infer that the prosecutor intended the misconduct to result in a mistrial or was motivated by bad faith.[14]

---

[14] Defense and prosecution attorneys and the circuit court researched the question of the ethical lawyer's considerations involved in participating as both witness and counsel, and were unable to reach an agreement as to what the Canons of Professional Responsibility required, whether the jury was prejudiced and whether curative instructions would mitigate or aggravate the problem. For discussion of the lawyer as witness and as advocate see *Zeidler v. State,* 189 Wis. 44, 48, 206 N.W. 872 (1926);

At the time the mistrial was declared, defense counsel stated that there had been no prosecutorial misconduct causing the mistrial.[15] In his motion to dismiss further

*Baumgartner v. State*, 198 Wis. 180, 186, 223 N.W. 419, 224 N.W. 474 (1929); *Kink v. Combs*, 28 Wis.2d 65, 73, 135 N.W.2d 789 (1965); *Mack Trucks, Inc. v. Sunde*, 19 Wis.2d 129, 135, 119 N.W.2d 321 (1963); *Harris v. State*, 78 Wis.2d 357, 369, 254 N.W.2d 291 (1977); *State v. Koller*, 87 Wis.2d 253, 271, 274 N.W.2d 651 (1978). *See also*, Enker, *The Rationale of the Rule That Forbids a Lawyer to be Advocate and Witness in the Same Case*, 1977 A.B.F. Res. J. 455.

The Standing Committee on Professional Ethics of the State Bar of Wisconsin has advised that a special prosecutor should be obtained if the district attorney or an assistant district attorney is likely to testify in a case. *Code of Professional Responsibility and Opinions of the Standing Committee on Professional Ethics of the State Bar of Wisconsin*, Wisconsin Bar Bulletin Supplement to June 1979 issue, Memorandum Opinion, February 7, 1969, p. 84.

[15] *"Mr. Carter:* If it please the Court, with respect to the granting of the motion for mistrial, the defendant would state for the record that said motion was made out of what the defendant felt was a necessity caused by a set of circumstances which began approximately ten days before the commencement of this trial, on October 15, and that the Defense is in no way making any representations or any statements to this Court that the Defense feels that there was any prosecutorial misconduct. The defendant wants it very clear upon the record that we believe that this has resulted from a set of circumstances which were not completely able to be foreseen by the parties to this litigation, and that in no way does our motion for mistrial rest upon the basis of any prosecutorial misconduct and in no way do we make any statement to this Court that Mr. Lowe or anyone connected with the prosecution has done anything other than vigorously represent their client, the State of Wisconsin.

"We wish to advise the Court that in light of the most recent decision on mistrial, which I believe emanated from the Court of Appeals of Milwaukee County in *State v. Harrell* in September of this year [85 Wis.2d 331, 270 N.W.2d 428 (Ct. App. 1978)], that we do not make any representations of any prosecutorial misconduct or anything that the prosecutors did wrong. It was a series of events that we believe was unforeseen at the time that

prosecution on double jeopardy grounds, defense counsel argued that prosecutorial misconduct caused the mistrial. Defense counsel maintains that the prosecutor's "bad motives" were not discernible at the time of the mistrial but were demonstrated later when the prosecution added witnesses to those previously listed. The record does not show that the prosecution intended to cause a mistrial to obtain time in which to prepare a stronger case. During the interval between the mistrial and the date of the new trial, it appears that additional preparation was undertaken by the State, but that some of this additional preparation was probably due to the defense counsel's expressed intent of calling additional witnesses.

We conclude that the court of appeals should have heard defendant's appeal, and we further conclude that defendant's double jeopardy claim is without merit. We affirm the order of the circuit court.

*By the Court.*—Decision of the court of appeals is reversed; order of the circuit court is affirmed.

COFFEY, J. *(dissenting in part).* I agree that the defendant's double jeopardy claim is without merit. In fact, it is frivolous.

I disagree with the reasoning employed to reach the merits of this case. There is nothing final about the order of the circuit court; it denies a motion to dismiss. Whatever the federal rule may be, our statute, sec. 808.03 (1), Stats., defines a final order subject to appeal as a matter of right. It is one which disposes of the entire matter in litigation. This order does not. It was subject to discretionary appeal under sec. 808.03 (2), and we have held that a refusal of the court of appeals to allow a discretionary appeal is not subject to review in this

---

they started to move forward and we thank the Court for its indulgence and for its fair and we believe just determination on that motion."

court. *State v. Whitty,* 86 Wis.2d 380, 272 N.W.2d 842 (1978).

The opinion of the court does not overrule *State v. Whitty, supra,* because only two of the five justices joining in it agree that the order was subject to a discretionary appeal. Holding that denial of a discretionary appeal is reviewable by this court would have very serious consequences. It would be an open invitation to engage in delaying tactics, by seeking a discretionary appeal from a nonfinal order, and then seeking review of the order denying the discretionary appeal. It would result in a flood of petitions to review in this court.

The three justices who would hold the order to be final point out that the issue is collateral to and independent of the principal issue at trial. I would add that it goes to the jurisdiction of the trial court to proceed with a second trial. Collateral, jurisdictional issues may be raised by habeas corpus. Ordinarily the defense of former jeopardy does not entitle a prisoner to habeas corpus relief because the issue may be raised at trial. However, as stated in 39 C.J.S. *Habeas Corpus,* sec. 23 (1944):

"Habeas corpus is a proper remedy where it is claimed that the prisoner has been placed in jeopardy for the identical offense, because, if such assertion is true, it is not merely a matter of defense which, if not properly sustained in the trial court, would furnish ground for appeal, but it goes to the continuance of jurisdiction of the trial court for any purpose."

There is no need to establish procedures for expedited appeal in cases such as this, because a summary procedure for hearing a habeas corpus application is already in existence in ch. 292, Stats. The application may be heard by the court of appeals or by a single judge. Sec. 292.03. The writ shall be granted without delay. Sec. 292.06. The court or judge shall, after issue has been joined, "proceed in a summary way to examine into the

facts contained in the return and to hear the allegations and proofs of the parties . . . ." Sec. 292.19. This is the procedure the legislature has provided and the procedure which should be followed.

I also disagree with the citations set forth in the following footnotes.

Footnote 6. The second paragraph of this footnote finds an order granting a motion to withdraw a guilty plea terminates a particular proceeding or action (the guilt phase, the proceeding, that is the trial) and thus is a final order. The statute interpreted in the cited case *is not* the statute interpreted in this case. The statute in this case says *nothing* about "terminating a particular proceeding or action."

The sentence (which is followed by footnote 7) recognizes that this kind of an appeal is a dilatory tactic and directs the court of appeals to expedite the appeal. How can expediting an appeal sufficiently correct the *recognized* abuse? No adequate review of the claim can be made without a transcript. The time limits on transcripts are already *very* short from the point of view of the over-burdened trial courts. This cavalier direction to expedite the appeal in no way provides an effective preventative to the recognized abuse of a dilatory appeal; I would characterize the argument made on behalf of the 3 justices as a strained interpretation of the appeals statute. I would characterize the argument made on behalf of the other 2 justices as a judicial amendment of the statute, without case law or judicial authority supporting such action.

Footnote 9. The argument that the supreme court under its superintending power has the right to fashion a new *appellate* remedy is contrary to every decision of the supreme court holding that the right of *appeal is statutory*. Moreover, I question the need for a remedy to deal with a discretionary appeal as there already exists

an ultimate right of appeal. There is no need to fashion a remedy when one exists.

Footnote 10—what other states have done in deciding "whether to grant immediate appellate review" is irrelevant if appellate review is statutory, as our supreme court has repeatedly said it was.

For the foregoing reasons I would dismiss the petition for review, but I agree with the court that the issue raised by the defendant is without merit.

I am authorized to state that Mr. Justice CONNOR T. HANSEN joins in this dissent.

The following memorandum was filed May 19, 1980.

PER CURIAM *(on motion for reconsideration).* Upon reconsideration, we modify that portion of our initial opinion which held that a pretrial order denying a motion to dismiss, because of a claim that to go to trial would violate double jeopardy, was a final order appealable by right under sec. 808.03(1), Stats. We conclude that the order does not satisfy the statutory test for finality under sec. 808.03(1) but is, instead, a nonfinal order appealable only by permission of the court of appeals under sec. 808.03(2).

The decision of whether to grant permissive appeals under sec. 808.03, Stats., rests within the sound discretion of the court of appeals.[1] Nevertheless, we urge the court of appeals to be careful in exercising that discretion when the order sought to be appealed is one which denies a

---

[1] Accordingly, we decline to utilize our "superintending and administrative authority over all courts," Art. VII, sec. 3(1), Wis. Const., to direct the court of appeals to hear all permissive appeals from orders denying motions to dismiss based on double jeopardy. The decision of whether to hear such appeals is, as the statute provides, within the court of appeals' discretion.

motion to dismiss for double jeopardy. Given the serious constitutional questions raised by claims of double jeopardy, review of such orders will often be necessary to protect the accused from "substantial or irreparable injury"—one of the three criteria for testing the appropriateness of review under sec. 808.03(2).

As we pointed out in our initial opinion, determining the appealability of orders poses a question of statutory interpretation. Section 808.03, Stats., effective August 1, 1978, sets forth the following rules for appeals to the court of appeals:

"808.03 **Appeals to the court of appeals.** (1) AP-PEALS AS OF RIGHT. A final judgment or a final order of a circuit court or county court may be appealed as a matter of right to the court of appeals unless otherwise expressly provided by law. A final judgment or final order is a judgment or order entered in accordance with s. 806.06(1)(b) or 807.11(2) which disposes of the entire matter in litigation as to one or more of the parties, whether rendered in an action or special proceeding.

"(2) APPEALS BY PERMISSION. A judgment or order not appealable as a matter of right under sub. (1) may be appealed to the court of appeals in advance of a final judgment or order upon leave granted by the court if it determines that an appeal will:

"(a) Materially advance the termination of the litigation or clarify further proceedings in the litigation;

"(b) Protect the petitioner from substantial or irreparable injury; or

"(c) Clarify an issue of general importance in the administration of justice."

The new appeals statute replaced the troublesome list of intermediate orders appealable by right under the old provision, sec. 817.33, Stats., with an easily applied dichotomy: "Orders which '[dispose] of the entire matter in litigation' are appealable by right; all others are appealable only by permission." *State v. Rabe,* 96 Wis.2d

48, 56; 291 N.W.2d 809 (1980). Since the subject order allows the litigation to continue and thus does not dispose of the entire matter in litigation, it does not satisfy the test for finality under sec. 808.03(1). In their discussion of the new appeals procedure in *Wisconsin Appellate Practice,* sec. 402 (1978), Martineau and Malmgren state at two different points that "[a]n order denying a motion to dismiss is intermediate and not appealable" by right (p. 20) ; that such an order "is not a final order because it does not dispose of the entire matter in litigation" (p. 22).

The statutory test for appeals by right under sec. 808.-03(1), Stats., is considerably more stringent than the previous practice, which, in many respects, resembled the federal appeals practice discussed in our initial opinion. *Cf.,* 28 U.S.C. 1291; 9 Moore, *Federal Practice,* paras. 110.08[1], 110.10 (2d ed. 1980). Since, sec. 808.03(2) now provides a flexible procedure for seeking review of all nonfinal judgments and orders by permissive appeal, there is no need to adopt the three-pronged "collateral order" rule which enables federal appellate courts to review various intermediate orders. Martineau and Malmgren, *supra,* sec. 403 at 23–4. Accordingly, any implication contained in our initial opinion that the finality of orders should be tested under the three federal criteria is expressly withdrawn.

A defendant wishing to seek permissive review under sec. 808.03(2), Stats., from an order denying a motion to dismiss on double jeopardy grounds should file a petition for leave to appeal as provided in sec. 809.50. This procedure is advantageous and expeditious, because it requires the appeal to be initiated within ten days from the entry of the order.

This case came to us on a petition to review the court of appeals' decision that the order was not a final order appealable by right under sec. 808.03 (1), Stats.[2] A party aggrieved by a decision of the court of appeals that an order is nonfinal may seek review in this court upon a petition to appeal. The right to seek review does not exist, however, where the court of appeals, in the exercise of its discretion, declines to entertain a permissive appeal from an order the parties concede to be nonfinal. *State v. Whitty*, 86 Wis.2d 380, 388, 272 N.W.2d 842 (1978) ; *see also*, our initial decision in this case, 94 Wis. 2d at 77.

This court will not consider the merits of an appeal if it first determines that the court of appeals was correct in its decision that the order was not a final one appealable by right. Our determination on the merits in this case was premised on the erroneous conclusion that the order was final. Because we have resolved the double jeopardy argument against the defendant, we decline, on remand, to allow him the futile opportunity to seek leave to appeal under sec. 808.03 (2), Stats.

*By the Court.*—Decision of the court of appeals is affirmed; order of the circuit court is affirmed and the cause remanded for trial.

SHIRLEY S. ABRAHAMSON, J. (*concurring on motion for reconsideration*). If the court is unwilling at this time to direct the court of appeals to hear these appeals, then the majority should, I think, direct its attention to Jenich's argument that he, and others similarly situated, have a federal or state constitutional right to have the merits of a double jeopardy claim adjudicated

---

[2] The defendant initiated the appeal process by filing a notice to appeal by right from the circuit court's order denying his motion to dismiss.

before a second trial. The majority, without explanation, chooses not to decide this question.

I agree with the majority that a pretrial order denying a motion to dismiss the criminal complaint on the ground of double jeopardy is a non-final order appealable to the court of appeals upon leave granted by the court of appeals pursuant to sec. 808.03(2), Stats. However, I believe, as I said in the original opinion, that this court should, pursuant to its superintending and administrative authority, direct the court of appeals to hear all appeals taken from orders denying motions to dismiss based on double jeopardy because every order denying a motion to dismiss based on double jeopardy falls within the criteria of sec. 808.03(2), Stats., for granting leave to appeal. I would not object to the court adopting the phraseology the state suggests in its motion for reconsideration, namely that the court hold that as a matter of law orders denying motions to dismiss on double jeopardy grounds must always be reviewed to protect the accused from substantial or irreparable injury. Requiring review by the court of appeals is consistent with the United States Supreme Court's reasoning in *Abney v. United States*, 431 U.S. 651, 662, (1977), that "if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs."

The majority urges the court of appeals to be careful in exercising its discretion to take an appeal when a motion to dismiss for double jeopardy is involved. The majority, however, does not establish any guidelines or criteria to aid the court of appeals in exercising care and discretion in this category of appeals.

An obvious guideline is that the more meritorious the defendant's claim, *i.e.,* the better his chance of succeeding on his claim of double jeopardy, the greater the

risk of substantial and irreparable harm if the defendant does not obtain immediate appellate review of the order denying the motion to dismiss the second prosecution.

The state in its original brief recognized that the guideline for granting leave to appeal is the meritoriousness of the defendant's claim and urged that the court of appeals "screen" petitions to appeal involving double jeopardy claims and that the court of appeals deny leave to appeal to those petitions which are frivolous and insubstantial. Thus the state apparently would have two categories of petitions for leave to appeal: those which present a legitimate question regarding whether the defendant's right to protection from double jeopardy has been violated and those which present a frivolous claim. The state probably would have the court of appeals grant leave to appeal to those petitions in the first category because, *ipso facto*, the defendant will be irreparably harmed if the merits of the double jeopardy claim are not determined before trial. Because a frivolous claim of double jeopardy would not stop a second prosecution, the state reasons that the defendant will not be irreparably harmed if the merits of a frivolous double jeopardy claim are not heard before trial and the court of appeals denies leave to appeal.

In the instant case, the court of appeals apparently followed a procedure similar to the one suggested by the state of categorizing the merits of the double jeopardy claim in order to determine whether to grant leave to appeal. The court of appeals initially reviewed the petition in the instant case to characterize the substantive merits of the double jeopardy claim. The court of appeals characterized the claim as of "doubtful merit" and refused to grant defendant Jenich leave to appeal. Thus it appears that the court of appeals is placing petitions for leave to appeal into three categories: those

which raise a legitimate question and appear to have merit; those which raise a legitimate question and appear to have doubtful merit (but cannot be characterized as frivolous) ; and those which are frivolous. Thus the court of appeals apparently would deny leave to appeal to petitions which are not frivolous but which have doubtful merit.

I think that if the court of appeals is going to review preliminarily the petition for leave to appeal to characterize the merits of the double jeopardy claim when the court of appeals does not have the benefit of a record or an agreed statement in lieu of the record (Rule 809.15, Stats.), or full briefs on the issue, we have a more cumbersome and error-prone procedure than if the court of appeals were to decide the merits of each double jeopardy claim in an expedited manner.

I conclude that in order to grant effective protection to the defendant's rights under the double jeopardy provisions of the state and federal constitutions and in order to provide effective administration of the criminal justice system in the state, this court should, as did the United States Supreme Court in *Abney,* require immediate appellate review in the court of appeals of a pretrial order rejecting a claim of double jeopardy. If the court of appeals can determine from the petitioner's and state's papers on the petition for leave to appeal that the claim is frivolous, the court of appeals should grant leave to appeal and decide the appeal on the merits immediately by a summary affirmance of the trial court's order. Rule 809.21, Stats., allows for summary disposition of an appeal. I would further require the court of appeals to establish procedures pursuant to Rule 809.20, Stats., for expediting appeals involving double jeopardy claims.

Perhaps the majority and I are really missing the point in limiting our discussion to whether the defend-

ant's permissive appeal should or should not be granted as a matter of course in all instances. Perhaps we should be addressing the issue of whether the trial court may proceed with trial while an appeal is pending. Sec. 808.-07, Stats., provides that an appeal does not stay the enforcement of the order appealed from. *See* Rules 809.12 and 809.52, Stats.; Martineau & Malmgren, *Wisconsin Appellate Practice* ch. 8 (1978).

The federal courts of appeal must, as we noted in discussing *Abney*, review all appeals based on the claim of double jeopardy. The fifth circuit in *United States v. Dunbar*, 611 F2d 985 (5th Cir. 1980) was concerned with the district court's power to continue with a trial when a notice of appeal based on double jeopardy was filed with the fifth circuit. In order to avoid delay in trials because of frivolous, dilatory appeals, the fifth circuit court of appeals, under its supervisory power, requires the federal district courts to make written findings stating whether defendant's motion to dismiss based on double jeopardy is frivolous or non-frivolous. The rule in the fifth circuit court of appeals is that if the district court finds the defendant's claim to be frivolous, the defendant's filing of the notice of appeal does not divest the district court of jurisdiction over the case; if the district court finds the defendant's claim to be non-frivolous, the trial cannot proceed until a determination is made of the merits of the appeal. *United States v. Dunbar, supra,* 611 F.2d at 988. The fifth circuit court of appeals views the finding by the federal trial court that the appeal is or is not frivolous as helpful in enabling the appellate court to review a defendant's appeal expeditiously. *United States v. Dunbar,* 611 F.2d at 989. The fifth circuit explicitly retained the power to stay proceedings pending appeal or to issue a writ of mandamus or prohibition to protect the defendant's double jeopardy right

not to be tried pending appeal from the denial of a non-frivolous motion.

Our court has not considered the problem of staying trial court proceedings pending appeal. The parties do not address this issue either. The implicit assumption in the majority opinion is that while a petition for leave to appeal is pending and when leave to appeal is granted the trial court proceedings will be stayed because the appeal loses its value if the trial proceeds.