## RODNEY KING PULLEY *v.* STATE OF MARYLAND

[No. 1291, September Term, 1978.]

*Decided July 11, 1979.*

The cause was argued before GILBERT, C. J., and MOYLAN and LISS, JJ.

*Thomas J. Saunders, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Sam Brave, Assistant State's Attorney for Baltimore City,* on the; brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

At issue is the constitutionality of Maryland Rule 736 as applied to the appellant in this case, Rodney King Pulley. In what amounted to his fourth jeopardy, the appellant was convicted by a Baltimore City jury, presided over by Judge Elsbeth L. Bothe, of felony murder and the use of a handgun in the commission of a felony. The significant contention, of the three here raised by the appellant, is that Judge Bothe erroneously refused to rule on the merits of the appellant's motion to dismiss the indictment on grounds of double jeopardy..

Before moving on to the law, we would set the stage factually. The murder of Edsell Phillips, a resident of Ohio, occurred on October 16, 1974, near the Derby Bar on Park Heights Avenue in Baltimore City. The appellant came to trial before a Baltimore City jury, presided over by Judge James A. Perrott, on October 11, 1976. On October 13, a State's witness, on direct examination, apparently made an allusive reference to an unrelated criminal act on the part of the appellant. The defense moved for a mistrial and Judge Perrott granted the motion. On the very next day, October 14, a retrial before a new jury was begun. The docket entries reflect no filing of a double jeopardy claim as a bar to the retrial. Indeed, since the mistrial was declared on the motion of the appellant, only prosecutorial overreaching would have been available as grounds for such a claim. In any event, there is no record of any such motion, hearing or ruling thereon. The second trial, in turn, was aborted on October 22 when Judge Perrott declared a mistrial because of a hung jury. The

case was put back upon the tracks for yet a third occasion before another Baltimore City jury, presided over on this occasion by Judge J. Harold Grady, on January 24, 1977. Again, there is no indication in the record that double jeopardy was ever interposed as a plea in bar to this third jeopardy before Judge Grady. There was, of course, manifest necessity for the second declaration of mistrial under the authority of *United States v. Perez,* 22 U. S. (9 Wheat.) 579, 6 L. Ed. 165 (1824). This third jeopardy went forward all the way to a verdict of guilty of both first-degree murder and the use of a handgun. On appeal, we reversed the conviction on the grounds that a properly requested instruction on the defense of alibi was not given. *Pulley v. State,* 38 Md. App. 682, 382 A. 2d 621 (1978). This appellate reversal, on grounds other than the legal sufficiency of the evidence, would not bar a retrial on double jeopardy grounds. *Ball v. United States,* 163 U. S. 662, 16 S. Ct. 1192, 41 L. Ed. 300 (1896); *Burks v. United States,* 437 U. S. 1, 98 S. Ct. 2141, 57 L.Ed.2d 1 (1978). Our mandate was filed on March 21, 1978.

The appellant has been represented continuously by the Office of the Public Defender. Pursuant to Maryland Rule 736, a number of motions were filed on April 17, 1978, including a motion for a speedy trial; a motion to be transferred from the Maryland Penitentiary to the "court side" of the Baltimore City Jail; a motion to exclude any in-court identification tainted by impermissibly suggestive extrajudicial identifications and a motion to suppress any statement or confession. On April 17, as well, an application for bail reduction was filed and a hearing was held on April 28. A bill of particulars was requested on May 25 and a demand for discovery was filed on May 26. It is against this background that we view the motion to dismiss on double jeopardy grounds which was not filed until August 2, 1978, the very morning when the fourth trial was about to proceed.[1]

---

1. Curiously, the objection to the fourth jeopardy was not predicated upon the second jeopardy (which claim, of course, would have failed under *United States v. Perez, supra*) or the third jeopardy (which, of course, would also have failed under *Ball v. United States, supra*) but went all the way back to the first jeopardy of October, 1976. Thus, two years later and two uncontested jeopardies removed, the specter of that first mistrial was raised.

Judge Bothe granted the State's Motion *Ne Recipiatur* and refused to entertain, upon its merits, the appellant's motion to dismiss, because it was not timely filed according to the clear command of Maryland Rule 736. Rule 736, which became effective on July 1, 1977, and which replaced its predecessor Maryland Rule 725 d, provides, in pertinent part:

"a. *Mandatory Motions.*

A motion asserting one of the following matters shall be filed in conformity with this Rule. Any such matter not raised in accordance with this Rule is waived, unless the court, for good cause shown, orders otherwise:

1. A defect in the institution of the prosecution;

2. A defect in the charging document, other than its failure to show jurisdiction in the court or to charge an offense which defenses can be noticed by the court at any time;

3. An unlawful search, seizure, interception of wire or oral communication, or pretrial identification;

4. An unlawfully obtained admission, statement or confession;

5. A motion for joint or separate trial of defendants or offenses.

b. *Time for Filing Mandatory Motions.*

A motion filed pursuant to section a of this Rule shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel), except when discovery is furnished on an issue which is the subject of the motion, then the motion may be

---

Its merits are not before us because the procedural forfeiture issue is unaffected by whether the claim itself had compelling merit or was a transparent sham.

filed within five days after the discovery is furnished."

For purposes of computing the running of the time for the filing of mandatory motions under Rule 736 b, we note that the appellant was continuously represented by the Office of the Public Defender up to, including and subsequent to the time when the mandate came down from this Court reversing his conviction and remanding for a new trial. The series of motions filed pursuant to Rule 736 on April 17, 1978, were filed for the appellant by the Public Defender's Office. More specifically, they were filed by Assistant Public Defender Douglas N. Sharretts. Even though Mr. Sharretts was *de facto* in the case certainly as early as April 17, 1978, the docket entries reflect that he formally filed his appearance as counsel on May 8, 1978, replacing Assistant Public Defender Earl L. Carey, Jr., who had earlier represented the appellant. Even taking that later date of May 8, 1978, it is clear that more than 30 days went by between the filing of the appearance of counsel on May 8 and the making of the motion to dismiss on double jeopardy grounds on August 2.[2] It is also clear that at the hearing before Judge Bothe on August 2, no explanation was offered as to why this motion had not been timely filed. In short, no "good cause" was shown to relieve the appellant of the otherwise foreclosing effect for noncompliance with the filing deadline under Rule 736 b.

It is, moreover, clear that a motion to dismiss on double jeopardy grounds is one of those preliminary motions contemplated by Rule 736 a 1. The committee note to this new rule states:

"Subsection a 1 and a 2 include, but are not limited to allegations of improper selection and organization of the grand jury, disqualification of an individual grand juror, unauthorized presence of persons in the grand jury room, *former jeopardy, former*

---

2. Judge Bothe found, moreover, that the rearraignment following the remand had occurred almost four months prior to August 2.

> *conviction, acquittal,* statute of limitations, immunity and the failure of the charging document to state an offense." (Emphasis supplied)

With respect to the overall constitutionality of Rule 736 in terms of deeming as waived any mandatory motion not timely filed, we came to grips with this problem in *Kohr v. State,* 40 Md. App. 92, 388 A. 2d 1242 (1978). Although dealing with a related pretrial motion to suppress physical evidence, Judge Liss, speaking for this Court, spoke of the general constitutionality of the rule and its sanction at 40 Md. App. 98:

> "Such is not the case, however, under new Rule 736. It is clear that the Court of Appeals in adopting new Rule 736 decided, as a matter of judicial policy and administration, to make the Maryland rule parallel to Rule 12 of the Federal Rules of Criminal Procedure. Both rules are identical in that they require that motions to suppress be filed pre-trial and both consider a failure to raise timely objections to the admissibility of unlawfully seized evidence to constitute a waiver. This does not amount to a shifting of burdens since the state still has the duty of establishing such probable cause to justify the search and seizure or that the search and seizure falls within one of the several recognized exceptions to the warrant requirement. The defendant is still afforded an opportunity to litigate the issue and the requirements of Rule 736 do not amount to an unconstitutional burden on the accused."

See also *Jones v. State,* 42 Md. App. 209, 400 A. 2d 1 (1979). In dealing with a similar forfeiture of right provision under what is now Maryland Rule 735 d, involving a procedural forfeiture of the right to trial by jury, Chief Judge Murphy was very clear for the Court of Appeals in *State v. Jones,* 270 Md, 388, 393, 312 A. 2d 281 (1973):

> "Under the prevailing rule an accused has no absolute right to withdraw his waiver of a jury trial;

whether it will be permitted is a matter committed to the sound discretion of the trial court."

The appellant first attacks broadly the notion that waiver, under Rule 736 or otherwise, can ever be anything other than the intentional relinquishment or abandonment of a known right under *Johnson v. Zerbst,* 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). *Kohr v. State, supra,* is very explicit on this point at 40 Md. App. 99-100:

> "Appellant urges that the burden is on the state to show, on the record, that the defendant alleged to have waived a constitutional right has made a knowing and intelligent waiver. *Johnson v. Zerbst,* 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). While this is correct concerning the waiver of a number of rights, it does not apply to a failure to object affirmatively to the admission of evidence by way of a pre-trial motion. In the case of a Fourth Amendment claim it is the defendant who must initially object to evidence which he believes was illegally obtained. A failure to object by way of a pre-trial motion, where required by the Rules, has been held to be an effective waiver of Fourth Amendment rights. See: *United States v. Sisca,* 503 F. 2d 1337 (2d Cir. 1974), *cert. denied,* 419 U. S. 1008."

See also *Jones v. State* at 400 A. 2d 4.

Indeed, recent scholarship has pointed up the fallacy and the inherent confusion in referring to issues such as that now before us as questions of "waiver." Careful academic analysis, and the Supreme Court decisions on which it is based, distinguish between waiver, on the one hand, and "procedural default" or "procedural forfeiture," on the other hand. See generally Westen, *A way from Waiver: A Rationale for the Forfeiture of Constitutional Rights in Criminal Procedure,* 75 Mich.L.Rev. 1214 (1977); Spritzer, *Criminal Waiver, Procedural Default and the Burger Court,* 126 U. of Pa.L.Rev. 473 (1978); Hill, *The Forfeiture of Constitutional*

*Rights in Criminal Cases,* 78 Colum. L.Rev. 1050 (1978). As Westen, *supra,* points out at 1214:

> "[A] defendant can lose his constitutional defenses not only by waiving them, but also by 'forfeiting' them. The significant difference between waiver and forfeiture is that a defendant can forfeit his defenses without ever having made a deliberate, informed decision to relinquish them, and without ever having been in a position to make a cost-free decision to assert them. Unlike waiver, forfeiture occurs by operation of law without regard to the defendant's state of mind."

Even with respect to the most basic of constitutional rights, the Supreme Court has not been averse to declaring these rights forfeit when the procedural requirements for raising them have not been satisfied. In *Davis v. United States,* 411 U. S. 233, 93 S. Ct. 1577, 36 L.Ed.2d 216 (1973), the Supreme Court refused to allow the federal courts even to consider the question of whether a defendant had been deprived of his right to a grand jury free of systematic exclusion on racial grounds. The Court ruled that under the provision of Rule 12 (b) (2) of the Federal Rules of Criminal Procedure, a motion "based on defects in the institution of the prosecution or in the indictment" may be raised only before trial and that the failure to raise such motion in timely fashion "constitutes a waiver thereof." In *Kohr v. State, supra,* Judge Liss pointed out how Maryland Rule 736 was modeled upon Rule 12 of the Federal Rules of Criminal Procedure. The Supreme Court upheld the right of the states to promulgate similar rules of procedure and to insist that defendants follow them at the risk of seeing even constitutional claims declared forfeit in *Francis v. Henderson,* 425 U. S. 536, 96 S. Ct. 1708, 48 L.Ed.2d 149 (1976). See also *Michel v. Louisiana,* 350 U. S. 91, 76 S. Ct. 158, 100 L. Ed. 83 (1955).

Notwithstanding the constitutionality of the forfeiture of claims generally for failure to raise them in timely fashion, the appellant urges that a claim based upon the right against double jeopardy is in a class by itself and cannot be so

forfeited. He predicates this argument for special treatment upon a combination of *Abney v. United States,* 431 U. S. 651, 97 S. Ct. 2034, 52 L.Ed.2d 651 (1977); *Neal v. State,* 272 Md. 323, 322 A. 2d 887 (1974); *Claybrooks v. State,* 36 Md. App. 295, 374 A. 2d 365 (1977), and *Gray v. State,* 36 Md. App. 708, 375 A. 2d 31 (1977). The reliance is misplaced. None of those cases is directed to the question of the procedural forfeiture of a claim. They all deal with a decision as to double jeopardy on the merits and the right of a defendant ordinarily to take an immediate appeal from an adverse decision upon those merits. *Abney v. United States, supra,* interpreting federal statutes dealing with the right to appeal, and *Neal v. State, supra,* interpreting the Maryland statutory provisions on the right to appeal, both held that a decision on the merits of a double jeopardy claim is a "final decision" permitting the filing of an immediate appeal. The excellent analysis of Chief Judge Gilbert for this Court in *Claybrooks v. State, supra,* followed shortly thereafter by *Gray v. State, supra,* simply pointed out that a trial judge could not evade the command of *Neal v. State* simply by deferring his ruling on the merits of the double jeopardy claim. Both *Claybrooks* and *Gray* pointed out that if a motion to dismiss based on double jeopardy grounds is timely filed before trial, the defendant is entitled to a ruling upon that motion before trial so that he may take an immediate appeal subject only to the limitation that the point not be patently frivolous. In the case now before us, we are not dealing with the merits of double jeopardy at all. We are dealing with procedural forfeiture, pure and simple. The failure to make this mandatory motion within the prescribed time limits, absent good cause to forgive the dereliction, bars the claim where the claim arguably is pregnant with constitutional merit just as surely as where the claim is utterly bereft of merit. To rule otherwise would strip Rule 736 of its intended salutary effect. There is nothing in our case law or in the federal case law compelling, or even suggesting, such a holding. We affirm the ruling of Judge Bothe in refusing even to consider the claim upon its merits.

The remaining two contentions will not detain us long. The appellant claims that he was erroneously implicated by the

confessions of two non-testifying codefendants in contravention of *Bruton v. United States,* 391 U. S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968). The short answer to this contention is that no contemporaneous objection was made when the confessions where testified to. Following reference to these in closing argument by the State, the appellant asked for a curative instruction. He received a very adequate curative instruction (assuming one was required) and, thus, received everything he asked for. There is, therefore, nothing remaining to complain about.

The appellant's final contention is that damaging admissions made by him to a police undercover agent should not have been admitted because the undercover agent did not give him *Miranda* warnings. It is difficult to imagine an undercover agent giving *Miranda* warnings without "blowing his cover." It is clear that what was involved here was not custodial interrogation as to render *Miranda* even applicable. See *Hoffa v. United States,* 385 U. S. 293, 87 S. Ct. 408, 17 L.Ed.2d 374 (1966); *Hopkins v. State,* 19 Md. App. 414, 424, 311 A. 2d 483 (1973); *Cummings v. State,* 27 Md. App. 361, 381-382, 341 A. 2d 294 (1975).

*Judgments affirmed; costs to be paid by appellant.*