# RODNEY KING PULLEY *v.* STATE OF MARYLAND

[No. 81, September Term, 1979.]

*Decided April 10, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Thomas J. Saunders, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen Rosenbaum, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

We granted certiorari in this criminal cause to determine: 1) what time constraints, if any, are validly imposed by Maryland Rule 736, or otherwise, on a defendant asserting a claim that the pending prosecution against him is barred by the double jeopardy clause of the fifth amendment to the United States Constitution; and 2) whether, upon an immediate appeal being noted from the pretrial denial of such a claimed fifth amendment bar, a trial on the general issue conducted to final conclusion during the pendency of that appeal is a nullity. Since, even assuming that the time requirements of Rule 736 and its predecessor rules govern motions to dismiss an indictment for former jeopardy reasons, it is our conclusion that the motion in the present cause was timely asserted, we will with only limited discussion of the first question proceed to a disposition of the second issue presented. Moreover, as we conclude that the filing of the immediate appeal here did not render nugatory the subsequent criminal trial on the merits, and as we additionally determine that the present prosecution of the accused was not barred on double jeopardy grounds, we will affirm the judgment of conviction and sentence entered against him.

Petitioner Rodney King Pulley has been placed on trial before a jury four times in the Criminal Court of Baltimore on the grand jury indictment returned on December 18, 1974, charging him with both murder in the first degree and using a handgun in the commission of a felony. Extracted principally from the agreed statement of facts, we chronicle the relevant events, with a few to be added later, pertaining to each of these trials: the first, which took place in the fall of 1976, abruptly ended when Pulley's request that a mistrial be declared was granted by the presiding judge; the second trial occurred a short time after the first and

terminated in a similar manner when the jury failed to agree; the third concluded with the petitioner being convicted on both counts of the indictment, but this result was aborted when the Court of Special Appeals determined that error had been committed in the lower court and awarded Pulley a new trial, *Pulley v. State,* 38 Md. App. 682, 382 A.2d 621 (1978); and the fourth was terminated in the trial court with the petitioner being convicted in August 1978 of felony-murder as well as of the handgun charge, and sentenced to concurrent terms of imprisonment for life, and fifteen years, respectively. Because of their significance to a resolution of the issues here presented, we mention some of the additional events which surround this last trial, the one which is the subject of this appeal. The record discloses that although Pulley has been continuously represented vigorously and ably by an attorney from the Public Defenders' office from at least January 9, 1975, to the present time, and was arraigned on the charges contained in the indictment on March 8, 1976, it was not until August 2, 1978, just moments before the fourth trial was scheduled to begin, that a motion to dismiss the indictment on double jeopardy grounds was interposed. By way of this motion, Pulley asserts that because of what took place at his first trial in 1976, the fifth amendment to the United States Constitution bars his ever again being placed on trial for the offenses alleged against him, and therefore the indictment must be dismissed. The trial judge, after conducting a hearing on the former jeopardy claim, concluded that Rule 736 was applicable and since the motion to dismiss the indictment was not filed within the time prescribed by that rule, with no "good cause" being shown to excuse this failure, she granted the State's motion Ne Recipiatur which effectively denied the indictment dismissal motion. When Pulley reacted to this ruling by noting an immediate appeal to the Court of Special Appeals, the judge, nonetheless, directed that the trial proceed on the merits, resulting in the petitioner's conviction and sentence.

On appeal the Court of Special Appeals agreed with the trial court that Rule 736 a 1 was applicable to the

petitioner's dismissal motion on double jeopardy grounds, and concluded that since the motion was not timely filed in accord with subsection b of that rule, any right to claim a former jeopardy bar that may have previously existed was waived; consequently, the intermediate appellate court affirmed the conviction and sentence as entered by the Criminal Court of Baltimore. *Pulley v. State,* 43 Md. App. 89, 403 A.2d 1272 (1979). Even though we disagree with the rationale utilized in reaching this result, for other reasons to be explained presently, we will affirm the Court of Special Appeals' judgment.

## I

We begin our discussion of the first issue by pointing out that the relevant parts of Rule 736, namely subsections a, b and c, as they now read were adopted by this Court on January 31, 1977, effective July 1 of that year. Those sections read:

a. *Mandatory Motions.*

A motion asserting one of the following matters shall be filed in conformity with this Rule. Any such matter not raised in accordance with this Rule is waived, unless the court, for good cause shown, orders otherwise:

1. A defect in the institution of the prosecution;

2. A defect in the charging document, other than its failure to show jurisdiction in the court or to charge an offense which defenses can be noticed by the court at any time;

3. An unlawful search, seizure, interception of wire or oral communication, or pretrial identification;

4. An unlawfully obtained admission, statement or confession;

5. A motion for joint or separate trial of defendants or offenses.

b. *Time for Filing Mandatory Motions.*

A motion filed pursuant to section a of this Rule shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel), except when discovery is furnished on an issue which is the subject of the motion, then the motion may be filed within five days after the discovery is furnished.

c. *Other Motions.*

Any other defense, objection or request capable of determination before trial without trial of the general issue shall be raised by motions filed at any time before trial.[1]

The order of this Court adopting the new Rule 736 in part provides that it "shall take effect and apply to all proceedings commenced on or after July 1, 1977, and insofar as practicable, to all proceedings then pending . . . ."

Prior to the effective date of this new rule, its predecessor before rescission, designated as Rule 725 b, regulated the time within which pretrial motions were required to be filed. It read:

Defenses and objections based on defects in the institution of the prosecution or in the indictment, other than that it fails to show jurisdiction in the court or to charge an offense, *must be raised by*

---

**1.** Although not part of this rule, there is an accompanying committee note which reads:

Subsections a 1 and a 2 include, but are not limited to allegations of improper selection and organization of the grand jury, disqualification of an individual grand juror, unauthorized presence of persons in the grand jury room, former jeopardy, former conviction, acquittal, statute of limitations, immunity and the failure of the charging document to state an offense.

It was this footnote which largely influenced both the trial court and the Court of Special Appeals in independently reaching the conclusion that *motions to dismiss on double jeopardy grounds are motions which must comply with the time provisions of Rule 736 b.*

*motion before trial.* Such motion shall include all such defenses and objections then available to the accused. Failure to present any such defense or objection as herein provided shall constitute a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment to charge an offense shall be noticed by the court at any time during the proceeding. Any defense or objection capable of determination without the trial of the general issue may be raised before trial by motion. [(Emphasis added.)]

Recalling that (i) the indictment in this case was returned by the grand jury on December 18, 1974, (ii) the appearance of Pulley's attorney was entered of record on January 9, 1975, and (iii) the defendant was personally before the court at the least by March 8, 1976, when he was arraigned and entered pleas to the charges, it is "impracticable" to apply Rule 736 to the case now before us. This obviously follows from the fact that thirty days after "the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723" (Md. Rule 736 b) expired long before the thirty day time stricture was even created; consequently, assuming either Rule 736, or its predecessor 725 b, has application to the present double jeopardy motion, as between these two rules, 725 b must control. For a case reaching a like conclusion under almost identical circumstances see *Smith v. Fredericktown Bank,* 258 Md. 141, 144, 265 A.2d 236, 238 (1970). Since Rule 725 b, assuming its survival for this case, permits pretrial motions to be filed at any time "before trial," the motion to dismiss the indictment now before us, having met that mandate, was seasonably made.

With the timeliness of the motion to dismiss the indictment on former jeopardy grounds established, we turn now to its merits, which are so patently frivolous that we can reject petitioner's claim of error from its denial almost out of hand. The record discloses that during the course of the first

trial in 1976, the following answers to questions propounded by the State were given by a witness produced by the prosecution:

Q. Do you know where they were heading for as they left?

A. Not at that time. I knew they was going to Chuck's to see if they were — to see if they could get a car, a ride Rodney [Pulley] was going to get a ride. From what I can understand.

Q. From whom did you understand Rodney [Pulley] was going to try and get this ride?

A. From my brother. I overheard them. They were talking about it because the reason I heard it, that they had did a stick-up, they were talking about it in the cellar, I heard them talking about it when they were negotiating.

Claiming prejudicial error from these answers, the petitioner made a motion that the trial judge declare a mistrial, which was granted. Even though the mistrial was in accord with petitioner's expressed wish, he now claims that it creates a complete bar to further prosecution, and that consequently it was error to deny his motion to dismiss the indictment. However, we conclude that a retrial under the circumstances present here is clearly permissible. As Judge Eldridge made plain for this Court in *Jourdan v. State,* 275 Md. 495, 341 A.2d 388 (1975):

[W]here jeopardy has attached to a criminal defendant and a mistrial is thereafter declared, the determination of whether the Fifth Amendment's prohibition against double jeopardy bars a retrial depends upon the reasons for and circumstances surrounding the mistrial declaration.

One circumstance where a retrial is normally permitted after a mistrial, without further examination into the reasons for the mistrial, is *where the defendant sought or consented to the mistrial. [Id.* at 508, 341 A.2d at 396 (emphasis supplied).]

*See Bell v. State,* 286 Md. 193, 201-02, 406 A.2d 909, 913-14 (1979); *Cornish v. State,* 272 Md. 312, 318-19, 322 A.2d 880, 884-85 (1974). In the case now before us, Pulley "sought" the mistrial; consequently, since the record is devoid of any indication that the prejudicial statement resulted from any prosecutorial or judicial overreaching designed to harass the petitioner, or enhance the chances of his being convicted, there existed no double jeopardy impediment to his being retried. *Bell v. State, supra,* 286 Md. at 202-03, 406 A.2d at 913-14.

## II

The final point which we must address in the present case is the petitioner's contention that regardless of the merits of his double jeopardy claim, when he immediately appealed the trial court's denial of his dismissal motion, the court's jurisdiction to proceed further was suspended during the appeal period, and that thus his subsequent trial and conviction is a nullity. While we agree that the petitioner had the right to immediate appellate review of his former jeopardy claim, *Neal v. State,* 272 Md. 323, 325-26, 322 A.2d 887, 889 (1974), we disagree with his conclusion that his exercise of this right deprived the trial court of its power, which we here denominate as "fundamental jurisdiction," to adjudicate the controversy relating to the subject matter of this criminal cause. We explain.

Appellate practice in this State has long been governed by a legislative scheme which, for the most part, permits appeals in civil and criminal proceedings only from final judgments. *See* Md. Code (1974, 1980 Repl. Vol.), Courts Art., §§ 12-301 to -308. In addition to a number of statutorily permitted appeals from interlocutory orders, *id.* § 12-303, a corollary to this finality of judgment rule has developed over the years so as to permit appeals from some "seemingly interlocutory order[s] which den[y] an absolute constitutional right." *Stewart v. State,* 282 Md. 557, 566, 386 A.2d 1206, 1211 (1978). *Accord, e.g., Neal v. State, supra,* 272 Md. at 325, 322 A.2d at 888; *Pearlman v. State,* 226 Md.

67, 71, 172 A.2d 395, 397 (1961); *Lee v. State,* 161 Md. 430, 433, 157 A. 723, 724 (1931), *cert. denied,* 290 U.S. 639 (1933); *Condon v. Gore,* 89 Md. 230, 234, 42 A. 900, 902 (1899). The defense of double jeopardy is, as we have already suggested, one such "seemingly interlocutory order" and thus may be appealed prior to the entry of a final judgment in the criminal cause in which the defense is raised. Pulley, therefore, having raised a claim of double jeopardy which was denied because deemed untimely, had the right, which he properly exercised, to immediately appeal the trial court's adverse determination of this issue. *Neal v. State, supra,* 272 Md. at 326, 322 A.2d at 889.

The more troublesome aspect of petitioner's contention before this Court is the effect which he asserts the taking of an appeal has on the proceedings then pending in the trial court — that the permitted appeal of an interlocutory order, such as the denial here of a double jeopardy-based dismissal motion, deprives the trial court of its jurisdiction in the cause, thus suspending its authority to proceed, and causing any action which it does take pending the appeal to be void. Since the word "jurisdiction" encompasses different meanings depending upon the context in which it is being used, we note that as applied to courts, unless otherwise modified, it "is a term of large and comprehensive import and embraces every kind of judicial action." *Landis v. City of Roseburg,* 243 Ore. 44, 411 P.2d 282, 285 (1966) (en banc). Thus, it may, but does not necessarily always, refer to the "fundamental jurisdiction" of a court, i.e., "the power residing in [a] court to determine judicially a given action, controversy, or question presented to it for decision." *Fooks' Executors v. Ghingher,* 172 Md. 612, 621, 192 A. 782, 786, *cert. denied subnom, Phillips v. Ghingher,* 302 U.S. 726 (1937). *Accord, Urciolo v. State,* 272 Md. 607, 616, 325 A.2d 878, 884 (1974) ("the power to inquire into the facts, to apply the law and to declare the punishment for an offense"); *Moore v. McAllister,* 216 Md. 497, 507, 141 A.2d 176, 182 (1958) ("*power* of a court to render a valid decree"). For a fuller discussion of this concept see *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 333-35, 322 A.2d 539, 542-43

(1974). "Fundamental jurisdiction," as we now use that term, is the power to act with regard to a subject matter which "is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred." *Cooper v. Reynolds' Lessee,* 77 U.S. (10 Wall.) 308, 316, 19 L. Ed. 931 (1870). "If by that law which defines the authority of the court, a judicial body is given the *power* to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction." *First Federated Com. Tr. v. Comm'r, supra,* 272 Md. at 335, 322 A.2d at 543. Thus, any action taken by a court while it lacks "fundamental jurisdiction" is a nullity, for to act without such jurisdiction is not to act at all. *See, e.g., Fisher, Admrx. v. Demarr,* 226 Md. 509, 515, 174 A.2d 345, 348 (1961); *Fooks' Executor v. Ghingher, supra,* 172 Md. at 619, 192 A. at 785; *Wickes v. Caulk,* 5 H. & J. 36, 42 (1820). For a recent discussion of "fundamental jurisdiction" in the double jeopardy context, *see Parks v. State,* 287 Md. 11, 17-18, 410 A.2d 597, 601-02 (1980); *Block v. State,* 286 Md. 266, 270-73, 407 A.2d 320, 322-24 (1979).

With these general principles in mind, we now turn to an examination of the contention urged by the petitioner that the noting of an appeal ousts the trial court from its "fundamental jurisdiction" to proceed with a case during the pendency of the appeal, for only in that context would the actions taken by the trial court here be void. We recognize that a number of our decisions arguably can support this proposition by their reference to a "lack of jurisdiction" or "suspension of authority" on the part of a trial court while an appeal is pending, *see, e.g., Stewart v. State, supra,* 282 Md. at 573, 386 A.2d at 1214; *State v. McCray,* 267 Md. 111, 145-46, 297 A.2d 265, 283 (1972); *Stacy v. Burke,* 259 Md. 390, 401, 269 A.2d 837, 844 (1970); *Bullock v. Director,* 231 Md. 629, 633-34, 190 A.2d 789, 792-93 (1963). However, with the possible exception of *Bullock,*[2] we do not read these

---

**2.** To the extent that the views here expressed may be contrary to the holding of *Bullock v. Director,* 231 Md. 629, 190 A.2d 789 (1963), we

authorities as signifying that the "fundamental jurisdiction," as we now define that term, of the trial court ceased to exist or was transferred to the appellate court; rather, it is our view that the general use of the term "jurisdiction" was merely an indication that the trial court, from which the appeal had been taken, was prohibited from re-examining the decision or order upon which the appeal was based. In other words, the trial court retains its "fundamental jurisdiction" over the cause, but its right to exercise such power may be interrupted by (i) statute or Maryland Rule, (ii) the posting of authorized appeal bond, or bail following a conviction and sentence, or (iii) a stay granted by an appellate court, or the trial court itself, in those cases where a permitted appeal is taken from an interlocutory or final judgment.

To adopt the position of the petitioner would be contrary to the policy of this State, as reflected in legislative enactments, the Maryland Rules and other decisions of this Court, that no judgment, either civil or criminal, is stayed pending appeal (with the exception of the death penalty, *see* Md. Code (1957, 1976 Repl. Vol., 1979 Cum. Supp.), Art. 27, § 414; Md. Rule 778 a, and appeals relating to designated orphans' court proceedings, *see* Md. Code (1974, 1980 Repl. Vol.), Courts Art., § 12-701 (a) (1)) without, in most cases, the filing of a bond or obtaining a stay order from the trial or an appellate court. *See, e.g.,* Md. Code (1974, 1980 Repl. Vol.), Courts Art., §§ 12-701 (a) (2) and (b) (regulating appeals from orphans' court and court sitting in juvenile matters); *Cook v. Boehl,* 188 Md. 581, 592, 53 A.2d 555, 561 (1947) (appeal from decree directing sale does not stay proceedings); *Webster v. Archer,* 176 Md. 245, 258, 4 A.2d 434, 439-40 (1939) (same — mortgage foreclosure sale); Md. Rule 1017 (requires filing of bond to stay execution); Md. Rule 778 a (except for death penalty, other sentences stayed only upon terms which court deems proper). If fundamental

overrule that decision. In this regard, however, we mention that *Bullock* dealt with the exercise of jurisdiction between independent constitutionally created courts, rather than concerning the "fundamental jurisdiction" of one such court.

jurisdiction was lost, it would be unnecessary to require stays since the court could not act in any event. Moreover, particularly with regard to what may be termed as appealable interlocutory orders, a policy contrary to that which we announce today could play havoc with the trial of cases in this State. What we said nearly fifty years ago in support of the then policy against allowing piecemeal appeals applies with equal force in preventing abuse with regard to those that are presently permitted:

> If, on a question left to the court's discretion, upon a suggestion for removal, a prisoner [or other party] is permitted to take an immediate appeal, then proceedings in every criminal [or civil] case, great or small, may be stopped and delayed while the [party] prosecutes an appeal on this preliminary matter . . . . And this would add just so much to the resources of those who might find vexatious delays advantageous, and would multiply appeals in criminal [and civil] cases, often when [a judgment in the appealing party's favor], in the end, would render them profitless. [*Lee v. State, supra,* 161 Md. at 434, 157 A. at 724.]

We hasten to add, however, that merely because a trial may continue when an appeal is taken from an interlocutory order does not mean that a trial judge should normally do so, or that an appellate court should be any less diligent in deciding the merits of an interlocutory appeal. We especially urge caution when a court deals with an issue like double jeopardy since one of the main reasons why such a defense is made immediately appealable results because "the guarantee against double jeopardy assures an individual that, among other things, he will not be forced . . . to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense." *Abney v. United States,* 431 U.S. 651, 661, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1976); *accord, Green v. United States,* 355 U.S. 184, 187-88, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957); *Parojinog v. State,* 282 Md. 256, 260, 384 A.2d 86, 88 (1978). In order to

protect fully an accused's double jeopardy rights, trial courts should ordinarily permit a defendant who wishes to immediately appeal its ruling an opportunity to do so without requiring other stay procedures, and should only conduct the trial pending that appeal if the claim, in its view, is utterly without merit and the defense was interposed merely to accomplish unwarranted delay. If the trial court does, however, decide to proceed during the pendency of the appeal, it, absent a stay required by law, or one obtained from an appellate court,[3] has the authority to exercise the "fundamental jurisdiction" which it possesses. Moreover, in this regard, it is appropriate that we make clear that the mere failure to request or otherwise obtain a stay can neither constitute a waiver nor cause a forfeiture of a defendant's right to a review of the double jeopardy ruling. In the present case, a stay of Pulley's criminal trial pending the appeal was not granted by the trial court nor was one requested of or granted by either the Court of Special Appeals or this Court. Therefore, since the trial court here, notwithstanding the appeal, retained "fundamental jurisdiction" over the subject matter, the subsequent trial, in the absence of a stay order, was not, by that appellate action, rendered void.

*Judgment of the Court of Special Appeals affirmed.*

*Costs to be paid by petitioner.*

---

**3.** The appellate courts of this State may issue writs or other appropriate orders deemed necessary to preserve, or in aid of, their appellate jurisdiction. *See, e.g.,* State ex rel. Sonner v. Shearin, 272 Md. 502, 519, 325 A.2d 573, 583 (1974); State v. Rutherford, 145 Md. 363, 369, 125 A. 725, 727 (1922).