## CHARLES ELLSWORTH CARBAUGH, JR. *v.* STATE OF MARYLAND

[No. 39, September Term, 1981.]

*Decided October 8, 1981.*

The cause was argued before THOMPSON, MASON and WILNER, JJ.

*Martha Weisheit, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *George E. Burns, Jr., Assistant Public Defender,* on the brief, for appellant.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Lawrence V. Kelly, State's Attorney for Allegany County,* and *Michael R. Burkey, Assistant State's Attorney for Allegany County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Charles Ellsworth Carbaugh, Jr., the appellant, was convicted of driving with a revoked license. He was tried in the Circuit Court for Allegany County, before Judge J.

Frederick Sharer, sitting without a jury, despite a prayer for jury trial in the District Court.

The facts can be summarized as follows. Trooper R. J. Sivic of the Maryland State Police testified that at approximately 9:50 a.m. on August 25, 1980 he was patrolling the "Martin's Mountain" area of Route 40 in conjunction with an airborne speed surveillance. Trooper Sivic was alerted to the presence of a silver 1975 Chevrolet heading toward him at a high rate of speed. As the vehicle approached, Sivic signalled for it to pull over. Instead of stopping at the point indicated the vehicle made a quick right hand turn into a private driveway about 40-50 feet from the officer. Sivic testified that by the time he reached the automobile all 5 persons had exited from the right side. He then approached the appellant, Carbaugh, whom he believed to be the driver of the vehicle and requested that he display his license. Carbaugh responded that he was not the driver. After all the other passengers maintained that another of the group, Michael Yonkers, had been driving, Sivic decided that he had been mistaken and issued a traffic citation to Yonkers. The evidence indicates that Yonkers paid the fine exacted by the ticket at a later date.

Trooper Lester V. Lewis, also participating that day in the speed surveillance procedures, observed Sivic's actions while he, Lewis was ticketing another motorist. As Sivic finished writing the citation for Yonkers, Trooper Lewis approached him and stated that he had ticketed the wrong person because appellant had been driving the car. Over his emphatic protestations, appellant was subsequently cited for speeding and driving with a revoked license.

The appellant contends that his prosecution was collaterally estopped because Yonkers settled the issue as to who was the driver of the car by paying the fine mandated by the speeding citation. Under Md. Rule 736 the issue will be treated as waived.

Md. Rule 736 requires that certain motions or objections be made within specified time limits in order to avoid the forfeiture of the right to raise these motions. The Rule provides in part:

"Rule 736. *Motions Before Trial.*

    a. *Mandatory Motions.*

A motion asserting one of the following matters shall be filed in conformity with this Rule. Any such matter not raised in accordance with this Rule is waived, unless the court, for good cause shown, orders otherwise:

    1. A defect in the institution of the prosecution;

    * * *

    b. *Time for Filing Mandatory Motions.*

A motion filed pursuant to section a of this Rule shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 (Appearance — Provision for or Waiver of Counsel), except when discovery is furnished on an issue which is the subject of the motion, then the motion may be filed within five days after the discovery is furnished."

This Court has commented in general terms on the importance as well as the propriety of this Rule. *See, Kohr v. State,* 40 Md. App. 92, 96-98, 388 A.2d 1242, *cert. denied,* 283 Md. 735 (1978):

    "The Maryland Constitution, Article IV, Section 18A, vests in the Court of Appeals the power to promulgate rules of practice and procedure in the administration of the appellate courts and the other courts of the state and these rules 'shall have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise by law.' . . . The rules, when adopted within their authorized scope, are legislative in nature. . . .

    * * *

It is clear that the Court of Appeals in adopting new Rule 736 decided, as a matter of judicial policy and administration, to make the Maryland rule parallel to Rule 12 of the Federal Rules of Criminal Proce-

dure. . . . The defendant is still afforded an opportunity to litigate the issue and the requirements of Rule 736 do not amount to an unconstitutional burden on the accused." (footnote omitted).

An attack on the institution of a suit based on double jeopardy [1] grounds was among those preliminary motions contemplated by Rule 736 a 1. This is evidenced by the Committee note to this Rule which states:

"Subsections a 1 and a 2 include, but are not limited to allegations of improper selection and organization of the grand jury, disqualification of an individual grand juror, unauthorized presence of persons in the grand jury room, *former jeopardy,* former conviction, acquittal, statute of limitations, immunity and the failure of the charging document to state an offense. (emphasis added).

*See also, Pulley v. State,* 43 Md. App. 89, 403 A.2d 1272 (1979), *aff'd on other grounds,* 287 Md. 406, 412 A.2d 1244 (1980) and *Murray v. State,* 27 Md. App. 404, 409, 340 A.2d 402 (1975). In *Pulley* we said:

"In the case now before us, we are not dealing with the merits of double jeopardy at all. We are dealing with procedural forfeiture, pure and simple. The failure to make this mandatory motion within the prescribed time limits, absent good cause to forgive the dereliction, bars the claim where the claim arguably is pregnant with constitutional merit just as surely as where the claim is utterly bereft of merit. To rule otherwise would strip Rule 736 of its intended salutary effect." 43 Md. App. at 97.

The Court of Appeals subsequently held that, under the particular facts of *Pulley,* Rule 736 could not be applied to the defendant because that case was tried before the Rule

---

1. Although the precise question before us is "collateral estoppel" rather than "double jeopardy," the principles involved in both are more or less the same. *See,* Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

became effective. *See, Pulley v. State,* 287 Md. 406, 412 A.2d 1244 (1980), however, our discussion with respect to the purpose and application of Rule 736 was not questioned.

The appellant alleges that in view of *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), double jeopardy is a jurisdictional defect and as such remains reviewable on appeal despite the absence of a former adjudication of this issue.

In *Menna,* the defendant was indicted for his refusal to testify before a grand jury after having been granted immunity. He was adjudicated in contempt of court and was sentenced to a 30 day term in jail which was served. Subsequently the petitioner was indicted for his refusal to answer questions before the same grand jury in connection with the same investigation, the only difference being a separate sitting of the grand jury. The defendant asserted that the indictment should be dismissed under the double jeopardy clause of the Fifth Amendment to the United States Constitution. The request was denied and the defendant subsequently pleaded guilty. He thereupon appealed to the New York Court of Appeals which affirmed his conviction, declining to address the double jeopardy claim on its merits. The New York court held that the defendant had waived his double jeopardy claim with his counseled plea of guilty. On petition for certiorari, the United States Supreme Court reversed, holding that the defendant's plea of guilty did not result in a waiver of his right to claim that the indictment was in violation of his right against double jeopardy.

Revealing the limited nature of its holding, the Supreme Court noted:

> "We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim that — judged on its face — the charge is one which the State may not constitutionally prosecute." 96 S.Ct. at 242 n.2.

This statement clearly indicates that *Menna* did not hold double jeopardy was a jurisdictional issue. In contrast, the

case appears to reveal the limited circumstance under which a double jeopardy claim is not waived. Additionally, it is significant that in *Menna* the claim of double jeopardy had been asserted and denied prior to the rendition of the second guilty plea. As previously indicated, in the present case the claim of double jeopardy was not raised at any point at the trial below.

Inasmuch as double jeopardy is not a jurisdictional issue, it falls within the confines of Md. Rule 736. Thus, the failure to meet the time specifications of that rule will be deemed a waiver. Also, the question was not presented in any manner to the trial judge and therefore is not before us under Md. Rule 1085.

*Judgment affirmed.*
*Appellant to pay the costs.*